SIEGMAN & WEIL *et al. v.* UNITED STATES (No. 1620). UNITED STATES *v.* SIEGMAN & WEIL *et al.* (No. 1621).[1]

1. TRIMMINGS—RIBBONS, GALLOONS, GIMPS, BRAIDS, AND BANDS—RELATIVE SPECIFICITY.

In their common meaning, trimmings is a less specific term than ribbons, galloons, gimps, braids, or bands.

2. RIBBON.

A straight selvage is characteristic of ribbons as that term is commonly understood.

3. CONSTRUCTION—PARAGRAPH 150, TARIFF ACT OF 1913—CHANGE OF LANGUAGE SIGNIFIES CHANGE OF MEANING.

Paragraph 179, tariff act of 1909, contained a provision for laces, embroideries, braids, galloons, trimmings, and ornaments. Its successor, paragraph 150, tariff act of 1913, omitted these words. The intention must have been to exclude from the operation of the paragraph laces, embroideries, braids, galloons, trimmings, and ornaments made wholly or in chief value of tinsel wire, lame, bullions, or metal threads. This intention is emphasized by the fact that paragraph 358, tariff act of 1913, was made comprehensive enough to include all laces, embroideries, galloons, and ornaments, and braids and trimmings not specially provided for, whatever might be the yarns, threads, or filaments of which they were composed.

### United States Court of Customs Appeals, May 31, 1916.

CROSS appeals from Board of United States General Appraisers, G. A. 7770 (T. D. 35676).

[Modified.]

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis* (*Thaddeus S. Sharretts* and *Edward P. Sharretts* on the brief) for Siegman & Weil *et al.*

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument February 15, 1916, by Mr. Sharretts and Mr. Baldwin.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Narrow woven fabrics of various kinds, composed in chief value of tinsel wire or of metal threads and imported at the port of New York were classified by the collector of customs as laces, trimmings, and galloons, composed wholly or in chief value of metal threads, yarns, or filaments. In accordance with this classification, they were assessed for duty at 60 per cent ad valorem under that part of paragraph 358 of the tariff act of 1913 which reads as follows:

358. Laces, * * * and all lace articles of whatever yarns, threads, or filaments composed; * * * galloons, * * * ornaments; braids, loom woven and orna-

mented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for; trimmings not specially provided for; * * * all the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem.

The importers protested that the goods were not dutiable as assessed and claimed that they were classifiable under other paragraphs of the tariff act which subjected them to a lower rate of duty. The ground of protest really relied upon, however, by the importers was the claim that some of the goods were tinsel wire, lame or lahn, dutiable at 6 per cent ad valorem and that the rest were fabrics, ribbons, beltings, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, or of metal threads, and dutiable at 40 per cent ad valorem under that part of paragraph 150 which reads as follows:

150. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, 6 per centum ad valorem; * * * fabrics, ribbons, belting, toys, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, * * * bullions, * * * or metal threads, not specially provided for in this section, 40 per centum ad valorem.

At the hearing before the board, eight exhibits, representing some 52 samples of the merchandise, were introduced in evidence, and as to the commercial designation of the several items making up the different exhibits testimony was introduced on behalf of the Government and the importers.

Among other issues raised by the testimony was the question as to whether certain classes of the goods imported were commercially known as ribbons or beltings or as galloons, gimps, braids, bindings, bands, or trimmings. For a proper appreciation of the testimony tendered on that issue we give the meaning of those terms as they are commonly understood when applied to fabrics or things designed for the ornamentation of fabrics:

Standard Dictionary:

*Ribbon.*—A narrow strip of fine stuff, usually silk or satin, having two selvages and commonly less than 8 inches in width. Among the varieties of ribbon are *chiné, feather-edge, ferret, galloon, love, lustring or lustering, moire, Petersham, picot,. sarsenet, satin,* and *taffeta.*

Century Dictionary:

*Ribbon.*—1. Originally a stripe in a material, or the band or border of a garment, whether woven in the stuff or applied. 2. A strip of fine stuff. as silk, satin, or velvet, having two selvages. Ribbons in this sense seem to have been introduced in the sixteenth century. Ordinarily ribbons are made of widths varying from one-fourth of an inch, or perhaps even less, to 7 or 8 inches, but occasionally sash ribbons or the like are made of much greater widths. According to the fashion of the day, ribbons are made richly figured or brocaded, of corded silk with velvet and satin stripes, satin-faced on each side, the two sides being of different colors, each perfect, and in many other styles.

Standard Dictionary; Century Dictionary:

*Belting.*—Belts collectively, or the material from which belts are made.

Standard Dictionary:

*Galloon.*—1. A closely woven worsted lace, used for binding. 2. A dress trimming made of cotton or silk embroidered, sometimes with a scalloped edge. 3. A narrow metallic tape woven in silk, worsted, or cotton; used on uniforms, etc.; as silver *galloon.*

Century Dictionary:

*Galloon.*—1. Originally worsted lace, especially a closely woven lace like a narrow ribbon or tape for binding. * * * 2. In modern use: (a) A fabric similar to the above, of wool, silk, tinsel, cotton, or a combination of any of these. (b) A kind of gold or silver lace with a continuous even edge on each side, used on uniforms, liveries, etc.

New International Encyclopedia:

*Galloon.*—A narrow, tapelike fabric composed of silk or worsted, or of both. It is usually employed for binding garments, curtains, etc. The small band worn round gentlemen's hats is an example. It is also used as trimming material, and sometimes has a scalloped edge. When woven in gold or silver tinsel it is used as a trimming for uniforms.

Standard Dictionary:

*Lace.*— * * * 2. An ornamental cord, braid, or gimp of gold or silver, used for edging or decorating garments, etc.; galloon.

*Gimp.*—A narrow, flat, ornamental trimming, as of silk, cotton, wool, or beads, usually formed of or interlaced with cord or wire; used for dresses, furniture, etc.

Century Dictionary:

*Gimp.*—A flat trimming made of silk, worsted, or other cord, usually stiffened by wire and more or less open in design, used for borders for curtains or furniture, trimming for women's gowns, etc.

Standard Dictionary:

*Braid.*—A narrow, flat tape or woven strip for binding the edges of fabrics or for ornamenting them.

Century Dictionary:

*Braid.*—A narrow textile band or tape, formed by plaiting or weaving together several strands of silk, cotton, wool, or other material, used as trimming for garments, for stay laces, etc.

Standard Dictionary:

*Binding.*—* * * 3. A braid or strip folded and sewed on the edge of any fabric, or sewed over the place where two parts are joined, so as to protect and secure the parts covered by it.

*Band.*—A flat, flexible strip of any material used for binding, as of leather, rubber, cloth, paper, etc. * * * 2. Any flexible strip used as an article of dress, or to strengthen or ornament the clothing; as a neck *band;* hat *band.*

Century Dictionary:

*Band.*—* * * 2. Anything resembling a band in form or function. * * * (b) A border or strip on an article of dress serving to strengthen it or to confine it, as at the waist, neck, or wrist, as a waist *band;* a wrist *band;* a neck *band.*

Standard Dictionary:

*Trimming.*—Something added for ornament or to give a finished appearance or effect; that which embellishes or completes. (1) Material attached to a garment or the like for ornamentation.

Century Dictionary:

*Trimming.*—* * * 3. Anything used for decoration or finish; an ornamental fitting of any sort; usually in the plural, as the *trimmings* of a harness or of a hat.

From these definitions it is apparent that "trimming" in its popular acceptation is a very broad term indeed, and giving to it its common meaning it is evidently a much less specific designation than galloons, gimps, braids, bands, or ribbons designed to be used as a finish, embellishment, decoration, or ornament for garments or other productions. A thing may be a trimming and at the same time a ribbon, galloon, gimp, braid, or band, and from that it follows that unless some special trade meaning has attached itself to the terms we are now discussing, ribbons, galloons, gimps, braids, and bands must be regarded as more specific designations than trimmings. A tariff provision which provides for such articles by name, if any such there be, must therefore, for classification purposes, be preferred to a provision for trimmings not specifically provided for.

The Board of General Appraisers found that items 12851, 12494, 1391, 2662, and 2657 represented by Exhibit 2; item 306, represented by Exhibit 4; items 2291, 1914, and 4986, represented by Exhibit 6; and items 540, 483, 1321, and 12397, represented by Exhibit 7, were ribbons or beltings, and that they were therefore properly dutiable under paragraph 150. As to these items the board sustained the protest, and from that ruling the Government appealed. As to all the other items represented by the several exhibits the board overruled the protest, and from that part of the board's decision the importers appealed.

As appears from the samples, item 540 of Exhibit 7 is a plain loose-woven fabric about one-half inch in width and having two straight selvages. The importers' witnesses, Baruch and Boschen, and the Government's witnesses, Waitzfelder and Runk, testified that this article was known to the trade as a ribbon. The Government's witnesses (Waitzfelder, Schloss, and Runk) testified that it was also a trimming. Importers' witness Hirsch testified that it was a cap band or wire band. The Government admits that the goods represented by this item number are ribbons and that the board's decision as to them is correct.

Items 2662 and 2657 of Exhibit 2, and item 4986 of Exhibit 6, represent goods having two straight selvages, the first two items having a width of 1 inch and the third a width of 1¾ inches. The weave of all three items is closer, thicker, and more ornamental than that of item 540 of Exhibit 7. Importers' witnesses, Weil, Hirsch,

Baruch, and Boschen, and Government's witness Runk, testified that they represented goods which were known to the trade as belting. The Government's witnesses, Waitzfelder and Schloss, testified that they were known as galloons or trimmings. The Government admits that the merchandise represented by the last three items mentioned is beltings and that for the purposes of the case it is admitted that the board did not err in holding them to be dutiable under paragraph 150.

Items 12851, 12494 of Exhibit 2, and 12397 of Exhibit 7, represent goods with two straight selvages, having a loosely woven foundation through which is run a closely woven ornamental design. The ornamental design is the only feature which substantially distinguishes these goods from item 540 of Exhibit 7, which is conceded by the Government to be ribbon. Importers' witnesses Weil, Hirsch, Baruch, and Boschen testified that these goods were ribbons. Boschen testified that they were also beltings. Government witnesses Waitzfelder, Schloss, and Runk testified that they were trimmings. Waitzfelder and Schloss testified that they were also galloons, and Waitzfelder said that they were likewise gimps. The Government's witness Sutro declared that they were bands or braids, and Waitzfelder, Sutro, and Runk said that they were not ribbons, and Waitzfelder declared that they were not belting. The fact that ribbon can be used for belting and also as a trimming may in some measure explain the conflicting testimony as to whether the goods are known in the trade as a trimming, belting, or ribbon. But, however that may be, the board found that their status as ribbons had been established by a preponderance of the testimony and that finding we are not disposed to disturb, especially as the exhibits themselves warrant the conclusion that the goods are ribbons within the common meaning of the term. We are, therefore, of the opinion that the protest was properly sustained as to these items.

Importers' witnesses Weil, Baruch, and Boschen testified that the merchandise represented by item 1391 of Exhibit 2 was known to the trade as belting. It was also referred to by Weil as a sling lace. Hirsch, another witness for the importers, said that it was known to the trade as a belt webbing or, better said, belt-sling webbing. Waitzfelder and Schloss, witnesses for the Government, said that they would call the goods trimmings. Inasmuch as slings are the straps of sword belts from which the scabbard is suspended and a sling lace may be regarded as an ornamental braid for making a sling, which is part of a belt, we think the testimony submitted by the importers as to the item just referred to is not in conflict and that it clearly outweighs that of the Government witnesses, who testified to the name assigned by *them* to the article rather than to its trade designation. On the evidence brought out at the hearing, we think the

board was justified in holding that the merchandise represented by item 1391, Exhibit 2, was known to the trade as belting, and therefore dutiable under paragraph 150, as claimed in the protest.

Items 306 of Exhibit 4, 483 of Exhibit 7, and 1914 and 2291 of Exhibit 6 are flat, closely woven ornamental fabrics, having both edges either scalloped or serrated and varying in width from one-half inch to 1⅜ inches.

Item 1914 is a thinner, narrower, more flexible, and less ornamental stuff than that represented by items 306, 483, and 2291, which are apparently brocaded and do not differ materially from one another except in width. Importers' witnesses Weil and Baruch testified that item 1914, which is only one-half inch in width, was known to the trade as a ribbon. Importers' witnesses Baruch and Boschen declared that it was a belting. Importers' witness Hirsch said it was a braid, metal galloon, or metal braid. Government's witnesses Waitzfelder, Schloss, and Runk said that it was a trimming. Waitzfelder also said that it was a galloon. Runk stated further that it was an upholstery trimming and that it was not a ribbon or belting.

Importers' witnesses Weil and Baruch testified that item 306, which is 1⅜ inches in width, was a ribbon. Weil said that it was a binding. Importers' witnesses Baruch and Boschen said that it was a belting. Importers' witness Hirsch declared that it was known as a galloon metal border and also as a webbing. Government's witnesses Waitzfelder, Schloss, and Runk said that it was a trimming and Runk declared it to be an upholstery trimming. Sutro and Runk stated that it was not known as ribbon or belting.

As to item 483, which is 1⅜ inches wide and substantially the same goods as item 306, Weil and Baruch for importers testified that it was a ribbon, and Weil, Baruch, and Boschen that it was a belting. Hirsch, another witness for the importers, stated that it was a galloon metal border or metal band. Weil admitted that some departments in dry goods stores called it a galloon and others a braid. He also said that some wholesalers called it upholstery lace and others a binding. Three witnesses for the Government stated that this same merchandise was a trimming. One of these witnesses said it was a galloon, and another declared it was known as an upholstery trimming and that it was not ribbon or belting.

As to item 2291, which is three-fourths of an inch wide, and differs substantially from items 306 and 483 only in width, two witnesses for the importers testified that it was a ribbon, two that it was a belting, and one that it was a galloon metal border or metal band. Three of the Government witnesses declared that it was known to the trade as a trimming, and one of the three said that it was an upholstery trimming and that it was not ribbon or belting. We do not think that the importer established a trade designation for the last

four named items by a preponderance of testimony. None of the four items has a straight selvage, which we consider to be characteristic of ribbons as that term is commonly understood, and therefore none of them can be classified as ribbons within the popular meaning of the term. It may be that they are used as a material to make belts, but if so it was not shown by the importers that they were chiefly used for that purpose rather than as a trimming. No commercial designation having been established, we must therefore hold that the four items last referred to are not classifiable for tariff purposes as ribbons or beltings and that the collector's classification should stand.

Item 1321 of Exhibit 7 is a closely woven tapelike band, made by weaving a metal thread over silk or cotton threads or yarns. The merchandise is less than half an inch wide and has two straight selvages. Two of the importers' witnesses testified that this item was commercially known as a ribbon, and one of them said that it was also known as a binding. Boschen at first testified that he knew nothing about it, but finally said it was belting. Hirsch declared that it was a cap lace or cap band. Government's witnesses Waitzfelder, Schloss, and Runk declared that it was a galloon, and Runk stated that it was an upholstery trimming, and not ribbon or belting. We do not think that this testimony was sufficient to establish that the goods represented by item 1321 was uniformly, generally, and definitely known to the trade and commerce of the country as ribbons or belting. They have two straight selvages and conform in a way to the popular conception of a ribbon. As we have already seen, however, the common meaning of "ribbon" embraces a class of ribbon known as galloon ribbon, and there is a class of galloon which is described as "a narrow metallic tape woven in silk, worsted, or cotton, used on uniforms, etc., as silver galloon." (Standard Dictionary.) "A kind of gold or silver lace with a continuous even edge on each side, used on uniforms, liveries, etc." (Century Dictionary.) "A narrow tapelike fabric, composed of silk or worsted, or of both  *  *  *.  When woven in gold or silver tinsel it is used as a trimming for uniforms." (New International Encyclopedia.) We think the merchandise of which item 1321 is a sample responds to these descriptions and would be commonly regarded as a kind of galloon. We must therefore hold that it is classifiable as a galloon, rather than as a ribbon or belting.

Item 2041 of Exhibit 7 is tinsel wire or lame, and as tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal is provided for *eo nomine* in paragraph 150 and subjected to a duty of 6 per cent ad valorem, we are of opinion that the goods represented by that item should have been assessed at that rate and no more.

The goods remaining are not claimed to be ribbons, beltings, or toys. They are laces, braids, ornaments, or trimmings, and are composed of tinsel wire, bullion, or metal threads. Though they are not ribbons, beltings, or toys, they are, of course, articles or fabrics, and as such they might well be classified under paragraph 150 were it not for the fact that such classification would be at variance with the intention of Congress as evidenced by the history of the legislation. Paragraph 179 of the tariff act of 1897, which is the prototype of the provision of paragraph 150 of the present tariff law, is as follows:

179. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, five cents per pound; bullions and metal threads, made wholly or in chief value of tinsel wire, lame or lahn, five cents per pound and thirty-five per centum ad valorem; laces, embroideries, braids, galloons, trimmings, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads, sixty per centum ad valorem.

That paragraph was amended by paragraph 179 of the tariff act of 1909 so as to read as follows:

179. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, 5 cents per pound; bullions and metal threads, made wholly or in chief value of tinsel wire, lame or lahn, 5 cents per pound and 30 per centum ad valorem; fabrics, laces, embroideries, braids, galloons, trimmings, ribbons, beltings, ornaments, toys, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads, 15 cents per pound and 60 per centum ad valorem.

The amendment changed the rate of duty and enlarged the scope of the predecessor paragraph by including fabrics, ribbons, and beltings. Paragraph 150 of the tariff act of 1913 amended out of paragraph 179 of the tariff act of 1909 the provision for laces, embroideries, braids, galloons, trimmings, and ornaments. From that amendment but one conclusion can be drawn, in our opinion, and that is that Congress intended to exclude from the operation of paragraph 150 laces, embroideries, braids, galloons, trimmings, and ornaments made wholly or in chief value of tinsel wire, lame, bullions, or metal threads. That intention was emphasized, we think, by making paragraph 358 comprehensive enough to include all laces, embroideries, galloons, and ornaments, and braids and trimmings not specially provided for, whatever might be the yarns, threads, or filaments of which they were composed.

With the exception of the bow knots, tassels, stars, and some of the fringes, the goods we are now discussing not only belong to one or other of the classes of goods expressly excluded from the operation of paragraph 150, but they are made wholly or in chief value of threads or filaments. Such goods are therefore strictly within the terms of paragraph 358 and are dutiable as therein provided.

The bow knots, which are made of tinsel wire, possibly too coarse to be regarded as filaments, the tassels and fringes, made of bullions

and metal threads, and the stars made of bullions and metal spangles, even if they be regarded as composed in chief value of the materials specified in paragraph 150 *and not covered by the provisions of paragraph 358,* are, nevertheless, either ornaments or trimmings, and therefore they can not be classified under paragraph 150.    To hold otherwise would simply mean the reading into that paragraph of words which Congress deliberately omitted by striking them out of the provision of which paragraph 150 is amendatory.    Horstman *v.* United States (6 Ct. Cust. Appls., 458; T. D. 35986).    While they are not dutiable under paragraph 358, neither are they dutiable under any of the paragraphs claimed by the importers, and consequently the classification and assessment of duty on the goods as made by the collector must stand.

In conclusion, we hold that items 1391, 2657, 2662, 12494, and 12851 of Exhibit 2, item 4986 of Exhibit 6, and items 540 and 12397 of Exhibit 7 are dutiable under paragraph 150, and as to them the decision of the Board of General Appraisers is affirmed.    As to items 306 of Exhibit 4, 1914 and 2291 of Exhibit 6, and 483 and 1321 of Exhibit 7, we decide that they are not ribbons or beltings, and that as they are within the enumerations of paragraph 358 the decision of the Board of General Appraisers as to them should be, and is, reversed.    Item 2041, as before stated, is tinsel wire provided for *eo nomine* in paragraph 150, and as to that item the decision of the board should be, and is, reversed.    The decision of the Board of General Appraisers in all other particulars is hereby affirmed.

*Modified.*