UNITED STATES *v.* VEIT, SON & Co. (No. 1856).[1]

1. CONSTRUCTION, PARAGRAPH 358, TARIFF ACT OF 1913—''YARNS, THREADS, OR FILAMENTS.''

The expression ''yarns, threads, or filaments,'' paragraph 358, tariff act of 1913, ....covers only such materials as are generally known to be for knitting, weaving, or ·· sewing..

[1] T. D 37540 (34 Treas. Dec., 174).

2. CONSTRUCTION. PARAGRAPH 150, TARIFF ACT OF 1913—TRIMMINGS.

Trimmings in chief value of lame or bullions are not classifiable under paragraph 150, tariff act of 1913.—Siegman & Weil *v.* United States (7 Ct. Cust. Appls., 195; T. D. 36506).

3. TRIMMINGS IN CHIEF VALUE OF LAME OR BULLIONS.

Trimmings composed in chief value of bullions or lame are dutiable, not as trimmings under either paragraph 358 or 150; tariff act of 1913, but as articles composed in chief value of metal; paragraph 167.

## United States Court of Customs Appeals, February 8, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8064 (T. D. 37188). [Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

*Sharretts, Coe & Hillis*, for appellants.

*Albert H. Washburn*, amicus curiæ.

[Oral argument Dec. 11, 1917, by Mr. Baldwin, Mr. Sharretts, and Mr. Washburn.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal, as impliedly limited by appellant's brief, relates to certain trimmings, some of which are fringes composed in chief value of bullions, the others being narrow strips composed in chief value of lame or lahn. It may here be stated that "lame" and "lahn" are simply different names for the same article, the one word issuing from the French, the other from the German language. The goods were imported under the tariff act of 1913.

The collector assessed duty upon the merchandise at the rate of 60 per centum ad valorem, under the provision for "trimmings * * * of whatever yarns, threads, or filaments composed," contained in paragraph 358 of the act. The importers protested, claiming the goods to be dutiable at the rate of 15 per centum ad valorem as manufactures in chief value of wire under paragraph 114 of the act; or at the rate of 20 per centum ad valorem, under the general provision for manufactures of metal in paragraph 167; or at the rate of 40 per centum ad valorem under the provision for "articles made wholly or in chief value of tinsel wire, lame or lahn, * * * bullions, or metal threads," contained in paragraph 150.

The Board of General Appraisers considered the case upon the evidence, and overruled the claim of the importers for an assessment of the merchandise under paragraph 114, as articles composed in chief value of wire, but sustained the importers' claim for assessment under the provision for articles composed in chief value of metal in paragraph 167. The Government appeals from this decision; there is no cross appeal filed by the importers.

The three paragraphs in question read as follows:

150. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, 6 per centum ad valorem; bullions and metal threads, made wholly or

in chief value of tinsel wire, lame or lahn, 25 per centum ad valorem; fabrics, ribbons, beltings, toys, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, or of tinsel wire, lame or lahn, and india rubber, bullions, or metal threads, not specially provided for in this section, 40 per centum ad valorem.

167. Articles or wares not specially provided for in this section: if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

358. Laces, lace window curtains not specially provided for in this section, coach, carriage, and automobile laces, and all lace articles of whatever yarns, threads, or filaments composed; handkerchiefs, napkins, wearing apparel, and all other articles or fabrics made wholly or in part of lace or of imitation lace of any kind; embroideries, wearing apparel, handkerchiefs, and all articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliquéd, or scalloped by hand or machinery, any of the foregoing by whatever name known; edgings, insertings, galloons, nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flouncings, flutings, quillings, ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for; trimmings not specially provided for; woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving, forming figures or designs, not including straight hemstitching; and articles made in whole or in part of any of the foregoing fabrics or articles; all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem.

It will be observed that paragraph 358, supra, provides for "trimmings * * * of whatever yarns, threads, or filaments composed." It is conceded that the goods in question are trimmings, and that they are composed in chief value of lame or lahn, or of bullions. If therefore lame or lahn, and bullions, may properly be called "yarns, threads, or filaments," in the tariff sense, then the present merchandise would answer to the description contained in the aforesaid paragraph. And this defines the first question raised by the present appeal, that is, whether lame or lahn, and bullions, are "yarns, threads, or filaments" within the contemplation of paragraph 358. If they are such, then the merchandise would be dutiable under that paragraph as assessed; otherwise the assessment should be held to be erroneous. Loewenthal v. United States (6 Ct. Cust. Appls., 209–216; T. D. 35464); Siegman & Weil v. United States (7 Ct. Cust. Appls., 195; T. D. 36506).

The testimony discloses the fact that both lame or lahn, and bullions, begin their existence in the form of tinsel wire. This is round wire composed principally of copper or brass, and usually coated with a bright metal, such as gold, silver, bronze, or foil. The article in this form is well known under the name of tinsel wire in trade and commerce and also in tariff nomenclature, and is devoted to various distinctive uses.

Lame or lahn is produced by drawing the round tinsel wire through metal rollers, whereby it is flattened into various widths. At the same time it is generally subjected to an ornamental corrugating process, or to a coating or coloring process. When thus flattened and corrugated, or coated or colored, the article no longer bears the name of tinsel wire in trade and commerce or in tariff nomenclature, but is known as lame or lahn.

Bullion is produced by subjecting lame or lahn to a twisting process whereby it is permanently brought to a hollow spiral form. In this form the article no longer bears the name of lame or lahn in trade and commerce or in tariff nomenclature, but passes under the name of bullion only. When imported into this country it is said to come in lengths of a yard or less. When applied to use, it is strengthened by means of a core of cotton or other fibrous thread running lengthwise through its center.

The lame or lahn now in question is about one-sixteenth of an inch in width, and is sewed in folded lengths by means of cotton threads upon one side of narrow strips of cotton netting. The bullions in question serve as pendants upon the fringe. The heading of the fringe is composed of metal threads and lame or lahn, and also of cotton weft threads which when extended furnish the cores for the bullion pendants.

It may be repeated that in some of the trimmings lame or lahn, and in the others bullion, is the component material of chief value, and the first question to decide is whether these materials are "yarns, threads, or filaments" in the contemplation of paragraph 358, supra. No commercial designation has been alleged or proven in the case; therefore we must accept the common or ordinary signification of the terms in question. The following definitions from approved authorities may be considered:

Standard Dictionary:

*Yarn.*—1. Any fibrous material from a natural source, whether animal, mineral or vegetable, that is made for use in weaving, knitting, embroidery, etc.; spun fiber as wool, cotton, flax, silk, or jute; loosely, thread; also a quantity of such spun material.

*Thread.*—1. A slender cord composed of two or more yarns or filaments, as of flax, cotton, silk, or other fibrous substance, twisted together.

*Filament.*—1. A fine thread, fiber, or fibril; any threadlike structure or appendage.

Webster's Dictionary:

*Yarn.*—1. Spun wool; woolen thread; also thread of other material, as of cotton, flax, hemp, or silk; material spun and prepared for use in weaving, knitting, manufacturing sewing thread, or the like. 2. Any of the threads forming the strand of a rope.

*Thread.*—1. A very small twist of flax, wool, cotton, silk, or other fibrous substance, drawn out to some length; a compound cord of two or more single yarns doubled or joined together and twisted; often specif., cotton thread or, in some places, linen.

*Filament.*—A thread or threadlike object, process, or appendage; a separate fiber.

Century Dictionary:

*Yarn.*—1. Originally thread of any kind spun from natural fibers, vegetable or animal, or even mineral; now more usually thread prepared by weaving, as distinguished from sewing thread of any sort. The term is also applied to stout woolen thread used for knitting, etc.

*Thread.*—1. A twisted filament of a fibrous substance, as cotton, flax, silk, or wool, spun out to considerable length.

*Filament.*—A fine untwisted thread; a separate fiber or fibril of any vegetable or animal tissue or product, natural or artificial, or of a fibrous mineral; as, a filament of silk, wool, cobweb, or asbestos.

According to these definitions the associated terms "yarns, threads, or filaments" would ordinarily apply to such materials only as may be used in the generally known processes of knitting, weaving, or sewing. This interpretaion is approved in the present case by a comparison of the several provisions of the tariff paragraph in question. That paragraph names many specific articles, all of which are made by knitting, weaving, or sewing, or similar processes, and finally applies to all of them the phrase now under review, to wit, "all of the foregoing of whatever yarns, threads, or filaments composed."

We are therefore convinced that these terms were intended to cover only such materials as are generally known as materials for knitting, weaving, or sewing, and inasmuch as the present lame or lahn, and bullion, are incapable of such use, the goods of which they compose the chief value do not answer to the qualifications of the paragraph.

It is argued on behalf of the Government that the bullion in these articles is capable of being again permanently straightened, and thus restored to its former status as lame or lahn, and that when thus straightened it might be used as a thread for sewing. We think it clear, however, that the bullion as a component material must be considered in its condition when it enters into the goods under review, and the question is whether it is then a yarn, thread, or filament, and not whether it may become such after its name and nature are changed by further processing. United States *v.* Meadows (2 Ct. Cust. Appls., 143; T. D. 31665); True Fit Waterproof Co. *v.* United States (7 Ct. Cust. Appls., 489; T. D. 37107).

In coming then to seek for the paragraph of the tariff act under which the merchandise should be assessed, we find upon inspection that it would fall within either paragraph 150 or paragraph 167, both above copied. It must furthermore be conceded that if the two paragraphs were compared without reference to the origin or history of either one, paragraph 150 would describe the present merchandise with the greater specificity and therefore would control the assessment. This subject, however, was considered by the court in the case of Siegman & Weil *v.* United States, supra, and it was held

therein that paragraph 150, owing to its legislative history, was not intended to apply to any kind of trimmings except such as were specifically enumerated therein. In that case Smith, Judge, speaking for the court, said:

The goods remaining are not claimed to be ribbons, beltings, or toys. They are laces, braids, ornaments, or trimmings, and are composed of tinsel wire, bullion, or metal threads. Though they are not ribbons, beltings, or toys, they are, of course, articles or fabrics, and as such they might well be classified under paragraph 150 were it not for the fact that such classification would be at variance with the intention of Congress as evidenced by the history of the legislation. Paragraph 179 of the tariff act of 1897, which is the prototype of the provision of paragraph 150 of the present tariff law, is as follows:

179. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, 5 cents per pound; bullions and metal threads, made wholly or in chief value of tinsel wire, lame or lahn, 5 cents per pound and 35 per centum ad valorem; laces, embroideries, braids, galloons, trimmings, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads, 60 per centum ad valorem.

That paragraph was amended by paragraph 179 of the tariff act of 1909 so as to read as follows:

179. Tinsel wire, lame or lahn, made wholly or in chief value of gold, silver, or other metal, 5 cents per pound; bullions and metal threads, made wholly or in chief value of tinsel wire, lame or lahn, 5 cents per pound and 30 per centum ad valorem; fabrics, laces, embroideries, braids, galloons, trimmings, ribbons, beltings, ornaments, toys, or other articles, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads, 15 cents per pound and 60 per centum ad valorem.

The amendment changed the rate of duty and enlarged the scope of the predecessor paragraph by including fabrics, ribbons, and beltings. Paragraph 150 of the tariff act of 1913 amended out of paragraph 179 of the tariff act of 1909 the provision for laces, embroideries, braids, galloons, trimmings, and ornaments. From that amendment but one conclusion can be drawn, in our opinion, and that is that Congress intended to exclude from the operation of paragraph 150 laces, embroideries, braids, galloons, trimmings, and ornaments made wholly or in chief value of tinsel wire, lame, bullions, or metal threads. That intention was emphasized, we think, by making paragraph 358 comprehensive enough to include all laces, embroideries, galloons, and ornaments, and braids and trimmings not specially provided for, whatever might be the yarns, threads, or filaments of which they were composed.

With the exception of the bowknots, tassels, stars, and some of the fringes, the goods we are now discussing not only belong to one or other of the classes of goods expressly excluded from the operation of paragraph 150, but they are made wholly or in chief value of threads or filaments. Such goods are therefore strictly within the terms of paragraph 358 and are dutiable as therein provided.

The bowknots, which are made of tinsel wire, possibly too coarse to be regarded as filaments, the tassels and fringes, made of bullions and metal threads, and the stars, made of bullions and metal spangles, even if they be regarded as composed in chief value of the materials specified in paragraph 150 *and not covered by the provisions of paragraph 358,* are, nevertheless, either ornaments or trimmings, and therefore they can not be classified under paragraph 150. To hold otherwise would simply mean the reading into that paragraph of words which Congress deliberately omitted by striking them out of the provision of which paragraph 150 is amendatory. Horstman *v.* United States (6 Ct. Cust. Appls., 458; T. D. 35986). While they are not dutiable under paragraph 358, neither are they dutiable under any of the paragraphs claimed by the importers, and consequently the classification and assessment of duty on the goods as made by the collector must stand.

The foregoing authority plainly excludes the present merchandise from paragraph 150, and therefore leaves it within the provisions of paragraph 167, supra. We do not overlook the views presented by the Government's counsel against this conclusion, but the result is now sustained not only by the reasons given in the foregoing quotation but also by the important rule of stare decisis. This view was taken by the board in the decision now upon appeal, and we accordingly affirm the same. As is stated in the opening of this opinion, the appellant's brief impliedly limits the present appeal to the two kinds of goods which are above passed upon; it is therefore unnecessary for us to go into detail concerning the other articles which were passed upon by the board.

*Affirmed.*