(C.D. 2308)

GIMBEL BROS., INC. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided January 16, 1962)

*John D. Rode* for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., dissenting

FORD, Judge: This case and the case of *The Barbizon Corporation* v. *United States*, 48 Cust. Ct. 27, C.D. 2309, decided concurrently, involve the basic proposition of whether an article made of a "synthetic textile," but not made from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, can be properly classified under the provisions of paragraph 1529 (a) of the Tariff Act of 1930, or as modified.

The merchandise involved in this case consists of certain nylon girdles, in part lace, which were assessed with duty at the rate of 35½ per centum ad valorem under the provisions of paragraph 1529 (a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as body-supporting garments, in part lace.

It is the position of the importer that said nylon girdles are properly dutiable at 26 per centum ad valorem under the provisions of paragraph 1529 (c) of said act, as modified, *supra*, as body-supporting garments, or, in the alternative, at 10 per centum ad valorem under the provisions of paragraph 1558 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739 and T.D. 52827, as nonenumerated manufactured articles.

The provisions of paragraph 1529 (a) Tariff Act of 1930, as modified by T.D. 54108, *supra*, and under which the imported merchandise was classified by the collector, provide, insofar as herein applicable, as follows:

Bandeaux-brassieres, brassieres, corsets, girdle-corsets, step-in-corsets; corsets, girdle-corsets, or step-in-corsets, attached to bandeaux-brassieres or brassieres; similar body-supporting garments; and articles to which any of the foregoing is attached; all the foregoing provided for in subdivision (19) of paragraph, 1529 (a) _____ 35½% ad val.

Subdivision (19), referred to above and as set forth in the publication of the United States Tariff Commission, entitled United States

Import Duties (1952), insofar as applicable herein, provides as follows:

Bandeaux-brassieres, brassieres, corsets, girdle-corsets, step-in-corsets; corsets, girdle-corsets, or step-in-corsets, attached to bandeaux-brassieres or brassieres; similar body-supporting garments; and articles to which any of the foregoing is attached; all the foregoing, whether or not described elsewhere in this subparagraph * * *.

Paragraph 1529(a), Tariff Act of 1930, provides in part as follows:

Laces, lace fabrics, and lace articles, made by hand or on a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, * * *; all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in * * *, subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, * * *.

Paragraph 1313, Tariff Act of 1930, reads as follows:

Whenever used in this Act the terms "rayon" and "other synthetic textile" mean the product made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, which product is solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever.

Paragraph 1529(c), Tariff Act of 1930, as modified by the abovementioned sixth protocol, and under the provisions of which it is claimed the imported merchandise is properly dutiable, provides as follows:

Corsets, girdle-corsets, step-in-corsets, brassieres, bandeaux-brassieres; corsets, girdle-corsets, or step-in-corsets, attached to brassieres or bandeaux-brassieres; all similar body-supporting garments; all the foregoing, of whatever material composed, finished or unfinished, and all wearing apparel or articles to which any of the foregoing is attached; all the foregoing whether or not containing elastic fabric_____ 26% ad val.

It is alternatively contended that said merchandise is properly dutiable under the provisions of paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*, which provides as follows:

Articles manufactured, in whole or in part, not specially provided for * * *_____10% ad val.

The record in the case at bar consists of a certain stipulation entered into by and between counsel for the respective parties. Said stipulation was approved by the court, and the case was submitted for decision. It was agreed, insofar as is pertinent herein, as follows:

1. That the merchandise described on the invoice as Girdle, all nylon-gauze, elastic net and embroidery, assessed with duty at the rate of 35½ per centum ad valorem under Paragraph 1529(a) consists of corsets, girdle-corsets, or step-in-corsets, or similar body-supporting garments, in part lace, wholly of nylon, not made from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing;

2. That the protest be deemed submitted on this stipulation, being limited to the merchandise described above.

Based upon this record, plaintiff contends that an article, in part lace, which is composed wholly of nylon and not made from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, is not classifiable under the provisions of paragraph 1529(a) of said act, *supra*, for the following reasons:

1. A synthetic textile, not composed of cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, is not a synthetic textile within the purview of the Tariff Act of 1930, by virtue of the provisions contained in paragraph 1313 [1] of said act, as interpreted by *J.M.P.R. Trading Corp., Alltransport, Inc.* v. *United States*, 43 C.C.P.A. (Customs) I, C.A.D. 600; *J.M.P.R. Trading Corp. and Alltransport, Inc.* v. *United States*, 37 Cust. Ct. 324, Abstract 60183; *United States* v. *Steinberg Bros.*; *Steinberg Bros.* v. *United States*, 47 C.C.P.A. (Customs) 47, C.A.D. 727.

2. The imported merchandise is not composed of yarn, threads, or filaments, within the purview of paragraph 1529(a) of the Tariff Act of 1930.

We are completely in accord with plaintiff that the phrase, "rayon or other synthetic textile," as utilized in paragraph 1529(a), *supra*, or, in fact, in any portion of the Tariff Act of 1930, does not cover nylon or any other synthetic textile, not composed of cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing. Paragraph 1313 of said act, as in force at the date of importation herein, relates only to synthetic textiles, composed of the enumerated products, *supra*.

Since paragraph 1313, *supra*, utilizes the language "Whenever used in this Act," the definition set forth therein is not limited to schedule 13 of the tariff act, but is equally appropriate throughout the entire act whenever used. Accordingly, we hold that nylon or a synthetic textile, not composed of cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, cannot find classification under the provisions of paragraph 1529(a),

---

[1] Paragraph 1313 was amended on September 13, 1958, and now reads as follows:

As used in this title, the term "rayon or other synthetic textile," means any fiber, filament, or fibrous structure, and any band or strip (suitable for the manufacture of textiles) not over one inch in width, all the foregoing whether formed by extrusion or by other processes from substances derived by man from cellulosic or noncellulosic materials by chemical processes, such as, but not limited to, polymerization and condensation, but the term does not include fibers, filaments, fibrous structures, or bands and strips of glass or other nonmetallic mineral, or of metal, paper, or natural rubber.

by virtue of the language, "rayon or other synthetic textile," used therein.

The second contention of plaintiff, based upon the theory that the imported merchandise is not composed of filaments, yarns, or threads, within the meaning of paragraph 1529(a), *supra*, is a more complex proposition. This theory does not seem to be borne out by decision in any previously contested case, nor does there appear to be any congressional intent to support this theory. However, in view of the complexity of this contention, it might be advisable to review the predecessor provisions of paragraph 1529(a) of the Tariff Act of 1930.

Prior to the Tariff Act of 1913, there was no one provision covering articles similar to those provided for in paragraph 1529(a). Said articles were covered by numerous provisions, depending upon the component material of which the article was composed. The enactment of the Tariff Act of 1913, for the most part, was the first real consolidation of such articles which are now provided for under the provisions of paragraph 1529(a) of the present act. By virtue of the enactment of the Tariff Act of 1913, certain litigation, insofar as is important herein, resulted. However, prior to reviewing some of these cases, we feel that the following language employed in said act should be set forth:

Laces * * * and articles made in whole or in part of any of the foregoing fabrics or articles; all of the foregoing of whatever yarns, threads, or filaments composed, * * *.

In the case of *Loewenthal & Co.* v. *United States*, 6 Ct. Cust. Appls. 209, T.D. 35464, the court, in considering certain beaded articles, which were classified under paragraph 358 of the Tariff Act of 1913, the predecessor of the paragraph here under consideration, reviewed the consolidation of the various paragraphs contained in previous acts. The court therein held that an article, to fall within the purview of the paragraph under which the merchandise was classified, must be in chief value of yarns, threads, or filaments. Since the chief value of the merchandise involved therein was beads, it was held not to be properly dutiable thereunder. Other principles of law were considered therein, but are not deemed pertinent to the issue presently before the court.

In the case of *Horstman Co.* v. *United States*, 6 Ct. Cust. Appls. 458, T.D. 35986, certain epaulets, agreed to be in chief value of metal threads, were considered by the court. As can be observed, *supra*, paragraph 358 of the Tariff Act of 1913 provided for certain enumerated articles "of whatever yarns, threads, or filaments composed." The court found the merchandise therein involved to be made of a thread, within the purview of paragraph 358 of said act, and, hence,

dutiable thereunder, since it was more specifically provided for under said paragraph than under paragraph 150 of said act, which provided for articles, made wholly or in chief value of metal threads.

In the case of *Morimura Bros.* v. *United States*, 6 Ct. Cust. Appls. 475, T.D. 36119, the court held that the language employed in paragraph 358 of the Tariff Act of 1913, viz, "all of the foregoing of whatever yarns, threads, or filaments composed," excluded the element of component material as a factor in determining the dutiability of articles which answered the description in the paragraph.

The definition of the materials intended to be covered by the language "yarns, threads, or filaments" was clearly set forth in *United States* v. *Veit, Son & Co.*, 8 Ct. Cust. Appls. 290, T.D. 37540. In the *Veit* case, *supra*, the court, after reviewing various dictionary definitions of the terms, made the following comment:

> We are therefore convinced that these terms were intended to cover only such materials as are generally known as materials for knitting, weaving, or sewing, and inasmuch as the present lame or lahn, and bullion, are incapable of such use, the goods of which they compose the chief value do not answer to the qualifications of the paragraph.

It is interesting to note that not all the definitions set forth in the *Veit* case, *supra*, allude to the fact that yarns, threads, or filaments are those of natural origin. This case has repeatedly been cited for the definitions of the terms, yarns, threads, and filaments, as those generally used in the process of knitting, weaving, or sewing. There would be no reason to consider the origin of yarns, threads, or filaments under the Tariff Act of 1913, since said tariff act utilized the phrase, "of whatever yarns, threads, or filaments," and a separate provision, at the same rate of duty, covered articles, composed of artificial silk, by whatever name known, without any definition or limitation as set forth in paragraph 1313 of the Tariff Act of 1930. Accordingly, there was no occasion for a determination by the court of the applicability of the provisions of paragraph 358 of the Tariff Act of 1913 with respect to articles, composed of artificial silk. We are of the opinion that the *Veit* case, *supra*, does not limit the definitions set forth therein of yarns, threads, and filaments to those of natural origin.

In order to determine the common meaning of a term utilized in the tariff act, the court may resort to the definitions set forth by the dictionaries and various lexicographers on and prior to the enactment of the tariff act under consideration.

Webster's New International Dictionary (1929), so far as is pertinent herein, defines the above terms as follows:

> **yarn** * * * 1. Spun wool; woolen thread; *also, thread of other material*, as of cotton, flax, hemp, or silk; material spun and prepared for use in weaving, knitting, manufacturing sewing thread, or the like. 2. Any of the threads forming a strand of a rope.

**thread** \* \* \* **1.** A very small twist of flax, wool, cotton, silk, *or other fibrous substance, drawn out to some length* ; a compound cord of two or more single yarns doubled, or joined together, and twisted ; often specif., cotton thread or, in some places, linen.

**filament** \* \* \* A thread or threadlike object, process, or appendage ; a separate fiber ; \* \* \*. **[**Italics ours.**]**

Although fibers of natural origin are included in some of the above definitions, it is apparent therefrom that said definitions were not limited thereto in the period immediately preceding the enactment of the Tariff Act of 1930.

From the foregoing, it is apparent that any articles enumerated in paragraph 358 of the Tariff Act of 1913 must have been composed of yarns, threads, or filaments. In addition, said yarns, threads, or filaments were required to be those generally used in the process of knitting, weaving, or sewing.

The definitions set forth in the *Veit* case, *supra,* were relied upon in the case of *Rolland Frères (Inc.)* v. *United States,* 11 Ct. Cust. Appls. 321, T.D. 39141, which involved articles made of visca and cellophane, among other things. The merchandise therein was classified under the provisions of paragraph 319 of the Tariff Act of 1913, which provided for "yarns, threads, filaments of artificial or imitation silk \* \* \* by whatever name known, and by whatever process made \* \* \*."

The court, in the *Rolland Frères* case, *supra,* described the difference between artificial silk, visca, and cellophane as follows:

\* \* \* Artificial silk, cellophane and visca are manufactures of hydrocellulose, but whether the hydrocellulose becomes artificial silk, cellophane, or visca, depends entirely on the mechanical treatment to which it is subjected in its viscous state and the form that it finally takes. If the hydrocellulose be forced through microscopic jets into a bath which coagulates the hydrocellulose threads, fibers, or filaments thus produced, the commodity is artificial silk which may be spun, woven, knitted, or applied to any textile purpose for which cotton, wool, or true silk may be used. If the hydrocellulose be projected through a slit or slot and coagulated into bands or strips or rolled into or cut from sheets, it becomes cellophane or visca.

\*          \*          \*          \*          \*          \*          \*

Whether the visca and narrow bands or strips of cellophane are similar *in use* to yarns, threads, fibers, or filaments of artificial silk depends altogether on whether such narrow bands or strips of cellophane or visca can be devoted to the uses peculiar to yarns, threads, or filaments, that is to say, to sewing, weaving, knitting, crocheting, tatting, embroidering, and needlework. See yarn, thread, filament, crochet, tat, embroider, and needlework, Standard Dictionary and Webster's Dictionary ; United States *v.* Veit, Son & Co. (8 Ct. Cust. Appls. 290, 293, 294). [Italics quoted.]

With respect to articles, composed of visca and cellophane, the court held they were not properly classifiable under the provision for "yarns, threads, or filaments," even by similitude, since they could not be used in substantially the same manner as "yarns, threads, or filaments," viz, knitting, sewing, or weaving.

It is to be noted that paragraph 358 of the Tariff Act of 1913 used the language "of whatever yarns, threads, or filaments composed," but made no provision for materials, such as tinsel wire, lame, bullions, metal threads, beads, bugles, or spangles. These materials were, however, specifically provided for in paragraph 1430 of the Tariff Act of 1922, with the addition of a provision covering products of cellulose, provided for in paragraph 1213 of said act.

It is interesting to note that the language of paragraph 1213 of the Tariff Act of 1922, which covered artificial silk, is substantially the forerunner of all of schedule 13 in the present act. Said paragraph 1213 of the Tariff Act of 1922 covers, basically, yarns and filaments, waste and yarns from waste, and yarns and threads. However, instead of the limitations or definitions set forth in the present paragraph 1313, as quoted, *supra*, the language of the 1922 provisions refers to yarns, threads, or filaments of artificial silk "by whatever name known and by whatever process made." The particular portion of paragraph 1213, to which paragraph 1430 of the Tariff Act of 1922 relates, reads as follows:

* * * products of cellulose, not compounded, whether known as visca, cellophane, or by any other name, such as are ordinarily used in braiding or weaving and in imitation of silk, straw, or similar substances, * * *.

Under the Tariff Act of 1922, the court, in the case of *United States v. Borgfeldt & Co.*, 14 Ct. Cust. Appls. 240, T.D. 41873, considered the change of language of paragraph 358 of the Tariff Act of 1913 and paragraph 1430 of the Tariff Act of 1922. After noting these changes and reviewing the *Veit* and *Rolland Frères* cases, *supra*, the court made the following observations:

This court thus, in the two cases cited, defined in a tariff sense the terms "yarns," "threads," and "filaments." Thereafter the Congress enacted the Tariff Act of 1922, and, we must assume, having in mind the construction thus placed upon these terms. In rewriting paragraph 358 of said tariff act of 1913 as paragraph 1430 of the Tariff Act of 1922, the concluding portion of said paragraph 358, as follows:

* * * all of the foregoing of whatever yarns, threads, or filaments composed—

was made to read in said paragraph 1430:

* * * when composed wholly or in chief value of yarns, threads, filaments, *tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213.* (Italics ours.)

It is contended this change of language was intended to meet and obviate the necessity of further judgments such as those rendered in the *Veit* and *Rolland Frères* cases above referred to, and that, therefore, those cases should no longer be followed as authorities. That the enactment of said paragraph 1430 did obviate the difficulty as to the material involved in both cases cited, can not be doubted. But we are totally unable to discover any apparent intent to disturb the construction which we gave in those cases to the terms "yarns,"

"threads," and "filaments," when applied to *any other materials* except as to those particularly inserted in said paragraph 1430, and which we have, in the quoted portion, italicized. To have disclosed such an intent would have been comparatively easy and might have been evidenced by a very slight change of language; in the absence of such a change, we are not justified in concluding the Congress intended any different construction to be placed upon these terms. [Italics quoted and supplied.]

It is apparent that the court therein felt the change of language of the italicized portion of paragraph 1430 of the Tariff Act of 1922 cited, *supra*, did alleviate the difficulty with respect to the component materials, particularly those involved in the *Veit* and *Rolland Frères* cases, *supra*. At this point, a further reflection on the phrase "products of cellulose," provided for in paragraph 1213, should be made. This portion of the paragraph was obviously designed to embrace visca or cellophane ordinarily used in braiding or weaving, even though it was not the character of yarns, threads, or filaments ordinarily considered as such. Hence, the addition of this provision enlarged the scope of paragraph 1430 of the Tariff Act of 1922 to include, among other things, visca and cellophane, but did not change nor enlarge the definition, heretofore set forth in the *Veit* case, with respect to yarns, threads, or filaments. If they are yarns, threads, or filaments, as defined, *supra*, they are clearly embraced by those words, regardless of the substance of which they are composed. The enumeration of such material as lame, bullion, etc., was specifically set forth to include those articles within the purview of said paragraph 1430, *supra*, although they are generally not of the character usually considered to be within the class of material covered by said paragraph. In our opinion, the inclusion of the specifically enumerated articles had nothing whatsoever to do with the terms, yarns, threads, and filaments.

When the Tariff Act of 1930 was enacted, the provision with respect to products of cellulose was changed to read "rayon or other synthetic textile." It is interesting to note that the definition of rayon and other synthetic textile, set forth in paragraph 1313 of the Tariff Act of 1930, provides for such product "which product is solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever."

In view of this definition, we are of the opinion that the provision for "rayon or other synthetic textile" was included within the provisions of paragraph 1529(a) of the Tariff Act of 1930 as a logical result of the decisions made prior to the enactment of said act and particularly to overcome the decision in the *Rolland Frères* case, *supra*. The remedy, of course, was first accomplished in the Tariff Act of 1922, but was carried forward with the required changes to comply

with the new schedule 13, covering rayon or other synthetic textile contained in the 1930 act. Accordingly, the provisions in paragraph 1529(a), relating to rayon or other synthetic textile, were, in our opinion, specifically made to cover such articles as were defined in paragraph 1313 of the Tariff Act of 1930, including visca and cellophane, which are generally not considered yarns, threads, or filaments. Research has failed to reveal any decision of the court or any expression of Congress which requires or even intimates that the terms, yarns, threads, and filaments, contained in paragraph 1529(a) of the Tariff Act of 1930, and the phrase, rayon or other synthetic textile, are mutually exclusive of each other.

We find that the involved merchandise is made of nylon gauze, elastic net, and embroidery, which are obviously made from yarns or filaments, and falls within the definition of said materials set forth in the *Veit* case, *supra*. The protest is, therefore, overruled. Judgment will be entered accordingly.

### DISSENTING OPINION

LAWRENCE, Judge: I am of the opinion, from an examination of the tariff structure of paragraph 1529(a) of the Tariff Act of 1930, in the light of its antecedent statutory provisions—paragraph 1430 of the Tariff Act of 1922 and paragraph 358 of the Tariff Act of 1913, respectively—that the language in said paragraph 1529(a) composed of yarns, threads, or filaments is limited to such materials of natural origin. This conclusion is borne out by the reasoning of our court of appeals in *United States* v. *Veit, Son & Co.*, 8 Ct. Cust. Appls. 290, T.D. 37540, and other cases discussed in the opinion of my colleague.

I am further of the opinion that the subject merchandise is excluded from classification in paragraph 1529(a), as modified, and is properly classifiable in paragraph 1529(c), as modified, and dutiable, as claimed by plaintiff.

I would, therefore, sustain the protest.