**No. 60183.**—J. M. P. R. Trading Corp. and Alltransport, Inc. *v.* United States, protest 287094–K (New York).

Ford, Judge: The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as "Mfrs. of other textile fiber" and the assessment of duty thereon at the rate of 35 percent ad valorem, plus 25 cents per pound, under paragraph 1312 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

Plaintiffs claim said merchandise to be properly dutiable at "10% under Par. 1558 and T. D. 52827" or at the rate of 32½ percent ad valorem under paragraph 1211 of the Tariff Act of 1930, as modified by the Torquay Protocol, *supra,* by virtue of the similitude clause of paragraph 1559, as manufactures, wholly or in chief value of silk, not specially provided for.

This case has been submitted for decision upon the following stipulation:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff and the Assistant Attorney General for the United States that the items marked A and checked HM by Examiner Harry Menschenfreund on the invoices covered by the above-entitled protest and assessed with duty at 35% ad valorem and 25¢ per lb. under the provisions of Par. 1312, Tariff Act of 1930, as modified by the Geneva and Torquay Protocols to the General Agreement on Tariffs and Trade reported in T. D. 51802, T. D. 52739, consist of nylon monofilament fishing line similar in all material respects to that the subject of *J. M. P. R. Trading Corp , Alltransport, Inc.* v. *United States,* C. D. 1658, affirmed by the Court of Customs and Patent Appeals in C. A. D. 600, wherein it was held that said nylon monofilament fishing line was dutiable by similitude to manufactures of silk under the provisions of par. 1211, Tariff Act of 1930.

IT IS FURTHER STIPULATED AND AGREED that the record in said C. D. 1658 be incorporated into the record of the above-entitled protest and that said protest be submitted on this stipulation, the same being limited to the items marked A as aforesaid.

Plaintiff waives the right to first calendar call and further amendment of this protest.

IT IS FURTHER STIPULATED, subject to the order of the Court, that the plaintiff may have thirty days from the date of filing of this stipulation in which to file a brief, and that the defendant may have thirty days thereafter in which to reply.

The only distinction between the present case and the previous nylon fishing lines case is that, in the former case, the collector classified the merchandise under

paragraph 1211 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and levied duty thereon at the rate of 35 percent ad valorem, and the merchandise was claimed dutiable at 20 percent ad valorem under paragraph 1558 or at 25 percent ad valorem under paragraph 5 of the Tariff Act of 1930, whereas in the present case the merchandise was classified as "Mfrs. of other textile fiber" and duty levied thereon at the rate of 35 percent ad valorem, plus 25 cents per pound, under paragraph 1312 of the Tariff Act of 1930, as modified, *supra.*

The brief of counsel for the defendant is in many respects the same in this case as that filed in the previous case, except it omits from its present brief some 10 pages of its former brief which was devoted to the similitude provisions of paragraph 1559. The record in the present case and the record in the previous case are identical, and no argument has been presented which causes us to change our mind on this subject. In disposing of the previous case, we said:

Before summarizing the evidence contained in the entire record, we shall first consider the alternative claim of the defendant under paragraph 1312, *supra,* and the evidence tending to support or disprove that contention. It is not disputed that the involved merchandise was manufactured by Societe Rhodiaceta and by it sold to Societe "La Soie," which, in turn, sold it to the plaintiffs herein. Regarding the materials used and the processes employed in producing the involved merchandise, Marc Saby testified as follows:

Q. Are you personally familiar with the materials used and the processes employed in the manufacture of the nylon monofilament sold by your company to La Soie?—A. Yes.

Q. Please describe fully the manufacturing process and name and describe the raw materials used?—A. Our firm effects the complete chemical synthesis of the raw materials necessary for the manufacture of nylon, namely, acids, amines and amino acids which are then processed into nylon polimer. The latter is in turn submitted to spinning in its molten form, in order to become a monofilament which, after being drawn out, finally acquires its permanent characteristics.

To sum it up, our firm takes care of the whole manufacturing process, starting with benzene up to the resulting monofilament which is sold to Societe "La Soie."

\* \* \* \* \* \*

The main steps of the processing are: transformation of the benzene into phenol; of the phenol into cyclohexanol; of the cyclohexanol into adipic acid or into amino caprolactame; transformation of the adipic acid into hexamethylene diamine.

Plaintiffs' witness, Dr. Snell, described what occurs chemically in the above process as follows:

A. Benzene is sulphonated to form benzene sulfonic acid, which is then fused with sodium hydroxide to form sodium phenolate. That, on treatment with hydrochloric acid, gives phenol. Hydrogenation of phenol gives cyclohexanol, which on dehydration forms cyclohexanone, which on oxidation forms adipic acid. At that point we might say that we take half the adipic acid and retain it for a later operation. The other half is treated with ammonia to form adipamide, which on dehydration forms adiponitrile, which on hydrogenation forms hexamethylenediamine. Hexamethylenediamine and adipic acid are the materials that go into the formation of the nylon. And on treatment under elevated temperature and pressure dehydration takes place with the formation of what is known as a polymer, giving a very large molecule of the order of molecular weight of 10,000 or more, which is nylon. The molten nylon can be treated in various ways at that point. It can be extruded in water to form a large monofilament which subsequently would be drawn to make smaller filaments. It may be forced through a spinneret to form a number of small filaments, which in some cases are subjected to high enough temperature so that they fuse together to

form a monofilament. Or if the object is to make cloth, why it will be forced through the spinneret, cooled with air, and the thread would be formed at that point.

The witness was then interrogated and answered as follows:

Q. In the process of making nylon which you have just described in chemical terms, was any cellulose used as an ingredient or material in the process?—A. No, cellulose doesn't enter into the process.

Q. Was any cellulose hydrate used?—A. No.

Q. Was any compound of cellulose used?—A. No.

It is our view that the testimony of witnesses Marc Saby and Dr. Snell establishes that at no time from the beginning of the process until the involved nylon monofilament was actually produced was there present or used any cellulose, cellulose hydrate, compound of cellulose, or a mixture containing any of the foregoing. Paragraph 1313, *supra,* is a congressional definition, in clear and unambiguous language, of "rayon" and "other synthetic textile." The Congress has specifically stated that these terms "* * * mean the product made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing," * * *.

The language employed by Congress in defining "rayon" and "other synthetic textile" is so clear and plain that it is not open to construction. Counsel for the defendant takes an opposite view, and, in its brief filed herein, refers us to the legislative history, insisting that "the background of Schedule 13, *supra,* is of great importance." With this argument we cannot agree. In dealing with a similar situation, in *United States* v. *The Singer Manufacturing Co.,* 37 C. C. P. A. (Customs) 104, C. A. D. 427, the Court of Customs and Patent Appeals said:

> Counsel for both parties have devoted much space in their briefs to a discussion of the legislative history of the involved paragraphs of the Tariff Act of 1930. As we view those paragraphs, however, there is nothing uncertain, obscure, or ambiguous about the language of the involved portions of paragraphs 327 or 372, *supra,* and there consequently seems to be no necessity for any recourse to legislative history. *Thorens, Inc.* v. *United States,* 31 C. C. P. A. (Customs) 125, C. A. D. 261; *George B. Zaloom* v. *United States,* 21 C. C. P. A. (Customs) 518, T. D. 46972.

To the same effect is the holding in the case of *United States* v. *Kung Chen Fur Corporation,* 38 C. C. P. A. (Customs) 107, C. A. D. 447, the Court of Customs and Patent Appeals saying:

> It is well settled, of course, that where ambiguity exists in the phraseology of a statute it is proper to resort to various rules, including an examination of legislative history, as an aid in construing it in order to arrive at the legislative intent. This principle is so thoroughly established that no citation of authority is deemed necessary in its support.
>
> It is equally as well settled that extrinsic aid properly may be invoked only after ambiguity has been found to exist; or, to state it differently, it is not proper to invoke extrinsic aid and thereby create ambiguity. In the case of *Railroad Commission of Wisconsin, et al.* v. *Chicago, Burlington & Quincy Railroad Co.,* 257 U. S. 563, 588–9, the Supreme Court of the United States declared that extraneous aids "are only admissible to solve doubt and not to create it." See also *S. Nathan & Co., Inc.* v. *United States,* 37 C. C. P. A. (Customs) 99, C. A. D. 426, with citations, and *United States* v. *The Singer Manufacturing Co.,* 37 C. C. P. A. (Customs) 104, C. A. D. 427, with citations.
>
> We indulge the further observation that matter relating to legislative history, which matter itself requires construction in order to understand it, is of no great aid to a court in construing a statute to which such matter purports to relate.

*       *       *       *       *       *       *

Consonant with the evidence, authorities, and view set out above, we hold that the involved merchandise cannot find classification directly under the provisions of paragraph 1312, *supra.* The question, therefore, remains as to whether or not the involved monofilaments may properly be classified under said para-

graph 1312, *supra*, by reason of the similitude provisions of said paragraph 1559. This question appears to have been heretofore answered by the appellate courts adversely to defendant's contention. In *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432, the Court of Customs Appeals held as follows:

> The present issue therefore is res nova, and relates to the classification for duty of rugs made of braids of dyed straw, without warp, sewed together with cotton threads. The board held that these were excluded from paragraph 368, by force of the ultimate proviso thereof, to wit, that "the terms 'grass' and 'straw' shall be understood to mean these substances in their natural state, and not the separated fibers thereof." It has been held repeatedly by this court that this proviso excludes manufactures of dyed straw from that paragraph. United States v. Gage (8 Ct. Cust. Appls. 306; T. D. 37584); United States v. International Forwarding Co. (8 id. 378; T. D. 37632); Johnson & Co. v. United States (10 id. 54; T. D. 38333); Cochran Co. v. United States (10 id. 62; T. D. 38336). And since the proviso expressly excludes these rugs from paragraph 368 as manufactures of straw, they should not be classified thereunder by similitude to manufactures of any of the other materials which are named in that paragraph. United States v. Neuman & Schwiers Co. (6 Ct. Cust. Appls. 228, 229; T. D. 35467); Schoenemann v. United States (119 Fed. 584); Fensterer & Ruhe v. United States (1 Ct. Cust. Appls. 93; T. D. 31110).

> Upon the same principle the rugs in question are excluded from assessment under paragraph 272, since that paragraph is limited by its express provisions to such as have a warp of cotton, hemp, or other vegetable substance. The present articles have no warp at all; therefore they do not respond to the enumerations contained in paragraph 272. And for the same reasons as last above set out they can not be included by similitude within a paragraph which contains express terms excluding them therefrom.

The above decision was followed and the rule therein announced reaffirmed in *Cresca Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 83, T. D. 43376, in the following language:

> * * * Early in the history of this court a rule was adopted as to the application of the doctrine of similitude, which has proved to be a safe one and has not been departed from. In *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110, Hunt, J., speaking for the court, discussed the somewhat divergent opinions of the Federal courts on this subject and finally adopted the rule laid down in *Schoenemann* v. *United States*, 119 Fed. 584, to this effect:

> > * * * When the statute expressly prescribes a duty for this material when it is in a certain condition, it must be taken to preclude the application of the similitude statute to the same material not in that condition.

> To the same effect are *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432; *United States* v. *Neuman & Schwiers Co.*, 6 Ct. Cust Appls. 228, T. D. 35467.

> Applying the principle here, a mixture containing sugar and water is dutiable under paragraph 501 only if it tests above 50 sugar degrees. No application of the similitude statute can put it into a classification from which it is expressly excluded.

In view of what we consider the very sound pronouncements in the authorities quoted above, we are satisfied that the involved merchandise cannot find classification by similitude under paragraph 1312 of the Tariff Act of 1930, as contended by counsel for the defendant, or under any of the other paragraphs contained in schedule 13, because the provisions of said paragraph 1313 are equally applicable to each of the paragraphs embraced in said schedule 13. To arrive at this conclusion, does not require a strict construction of said paragraph 1313 by this court. As heretofore stated, the Congress, by clear and unambiguous language, has excluded all merchandise from schedule 13, except "rayon" and "other synthetic textile" "made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing." To give to said paragraph 1313 any other construction, would be nothing short of attempted judicial legislation. This we decline to do.

Since the merchandise in this case is similar in all material respects to that the classification of which was involved in *J. M. P. R. Trading Corp. et al.* v. *United States, supra,* and the record is identical, and since both this court and the Court of Customs and Patent Appeals held the merchandise involved in that case to be properly dutiable under paragraph 1211 of the Tariff Act of 1930, by reason of the similitude provisions of paragraph 1559, we here follow the decision of the Court of Customs and Patent Appeals and hold the items of merchandise marked A and checked HM on the invoices to be properly dutiable at the rate of 32½ percent ad valorem under paragraph 1211 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra,* as alleged by the plaintiffs.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled.

Judgment will be rendered accordingly.