(C.D. 2448)

ROBERT E. LANDWEER & CO., INC.
CONSOLIDATED NET & TWINE COMPANY, INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 27, 1964)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

FORD, Judge: The question presented herein is a novel one, being the first time the court has been called upon to interpret paragraph 1313 of the Tariff Act of 1930 since its amendment by Public Law 85–645, 72 Stat. 602, T.D. 54676. Said paragraph, as amended, reads, so far as is pertinent herein, as follows:

> As used in this title, the term "rayon or other synthetic textile", means any fiber, filament, or fibrous structure, and any band or strip (suitable for the manufacture of textiles) not over one inch in width, all the foregoing whether formed by extrusion or by other processes from substances derived by man from cellulosic or noncellulosic materials by chemical processes, such as, but not limited to, polymerization and condensation, but the term does not include fibers, filaments, fibrous structures, or bands and strips of glass or other nonmetallic mineral, or of metal, paper, or natural rubber.
>
> (b) Notwithstanding the provisions of subsection (a) of this section, nothing in this section shall change the existing customs classification of nylon monofilament fishing line, nylon surgical sutures, nylon tennis racket strings or nylon brush bristles.

The merchandise covered by this case consists of perlon monofilament gill netting which was classified under the provisions of paragraph 1312 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and assessed with duty at the rate of 35 per centum ad valorem and 25 cents per pound.

Said paragraph 1312, as modified, *supra*, reads as follows:

> Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding one inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for_____ 27½¢ per lb. and 35% ad val.

124

NOTE: The specific part of the rate of duty applicable to any product provided for in paragraph 1312, Tariff Act of 1930, shall be_____ 25¢ per lb.

Plaintiffs herein contend the imported merchandise is not dutiable as classified, since the new definition contained in paragraph 1313, as amended, *supra*, includes the phrase, "suitable for the manufacture of textiles," which is alleged to be a limiting clause. Plaintiffs reason in order to have a valid classification under schedule 13, in this instance, the synthetic monofilament from which the imported gill netting is made must be "suitable for the manufacture of textiles."

Based upon this interpretation, it is contended that the imported merchandise is properly subject to classification under the provisions of paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*,[1] as made effective by T.D. 52827, as a nonenumerated manufactured article at the rate of 10 per centum ad valorem. Alternatively, it is contended said merchandise is properly subject to duty at the rate of 22½ per centum ad valorem, under the provisions of paragraph 1006 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865,[2] as made effective by T.D. 53877, as gill netting, by virtue of the similitude clause contained in paragraph 1559 of the Tariff Act of 1930, as amended. All other claims contained in the protest have been abandoned and are, accordingly, dismissed.

One entry, 9718, was severed at the trial, since the merchandise covered by said entry included seine as well as gill netting.

The record, in the instant case, consists of the testimony of one witness called on behalf of the plaintiffs and two exhibits. A sample of netting in the 5½-inch mesh size was received in evidence as plaintiffs' exhibit 1, as representative of the 4¼- and 6¼-inch mesh size netting, except as to mesh depth and length. An illustration was received as plaintiffs' illustrative exhibit 2, in which a gill net is depicted.

The testimony of the witness, Williard H. Branch, related to the fact that gill netting is the material from which gill nets are made; that, in order to make a gill net, a float line, floats, and a lead line or twine must be attached; that gill nets are used to catch fish by entangling or gilling the fish; that problems have arisen in the manufacture of monofilament gill netting, because of the loose knots and the slippage of the knots; that the manufacturer has overcome these difficulties by heating and bonding; that the diameter of the

---

[1] PAR. 1558—Articles manufactured, in whole or in part, not specially provided for (except the following: coconut shell char; dog food; marine glue pitch; synthetic rubber and synthetic rubber articles; tall oil or liquid rosin; textile grasses or fibrous vegetable substances; and edible preparations for human consumption other than yeast)_ 10% ad val.

[2] PAR. 1006—Gill nettings, nets, webs, and seines, and other nets for fishing, wholly or in chief value of flax, hemp, or ramie, and not specially provided for___ 22½% ad val.

monofilament of which the netting is made runs from 0.10 millimeter to 0.80 millimeter in increments of 5; that multifilament and monofilament gill nets are used in the same manner; that before the advent of synthetics, gill nets were made of linen or ramie.

The witness further testified that monofilaments, such as those used in plaintiffs' exhibit 1, have been used as fishlines, tennis racket strings, and purifier wire mesh; that synthetic gill nets have the advantage over linen nets, since they are invisible to the fish in clear water.

It is a basic proposition in customs jurisprudence that classification by the collector is presumed to be correct and that he found all the necessary facts to exist which would bring the imported merchandise within the classification. *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798.

Although plaintiffs endeavored to establish that the monofilament used in the gill netting involved herein was not susceptible to textile manufacturing, Judge Donlon, the trial judge, properly held that the witness had not been qualified with respect to textile manufactures.

In any event and notwithstanding the lack of evidence with respect to textile manufacturing, the basic proposition presented was the interpretation of the new definition contained in paragraph 1313, as amended, *supra*. It is the parenthetical phrase, "suitable for the manufacture of textiles," which is relied upon by plaintiffs herein. It is contended the phrase is a limiting one which requires all rayon or other synthetic textiles, as defined in paragraph 1313, as amended, *supra*, to be suitable for the manufacture of textiles. The grammatical construction of the paragraph does not bear out this theory. The use of a comma after "fibrous structure," in conjunction with the word "and," and the placing of the phrase in parentheses clearly evidence the intent of Congress to include within the scope of the provision any band or strip not over 1 inch in width, which is suitable for the manufacture of textiles. The parenthetical phrase does not modify "rayon or other synthetic textile" or "fiber, filament, or fibrous structure," but covers only bands or strips not exceeding 1 inch in width, as indicated, *supra*.

A review of the historical background of paragraph 1313, as originally enacted, is deemed pertinent at this point. The language "rayon" and "other synthetic textile" was utilized for the first time in the Tariff Act of 1930. The definition contained in the original paragraph 1313 provided as follows:

PAR. 1313. Whenever used in this Act the terms "rayon" and "other synthetic textile" mean the product made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, which product is solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever.

It is to be noted that said paragraph, as originally enacted, provided for a product which is "solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever."

In *United States* v. *James Loudon & Co.*, 22 CCPA 541, T.D. 47552, the court held that the term "rayon or other synthetic textile," as used in that instance in paragraph 1518 of the Tariff Act of 1930 and as defined in paragraph 1313 of said act, consists of words of extension and not words of limitation.

It is, therefore, apparent that the definition contained in paragraph 1313 of the Tariff Act of 1930 was not necessarily a definition of "textile," but included some articles which would not ordinarily be considered textiles. Further back in the judicial history, we note it was held that the definitions of "yarns, threads, or filaments" were intended to cover material generally known as materials for knitting, weaving, or sewing and, accordingly, did not embrace lame, lahn, and bullions involved in *United States* v. *Veit, Son & Co.*, 8 Ct. Cust. Appls. 290, T.D. 37540, which were incapable of such use. Following this was the case of *Rolland Frères (Inc.)* v. *United States*, 11 Ct. Cust. Appls. 321, T.D. 39141, which considered visca and cellophane. The court therein held said material not to be subject to classification under the provision for yarns, threads, or filaments, since it was not capable of being used in the same manner as yarns, threads, or filaments, viz, for knitting, weaving, or sewing. The above two cases arose under the Tariff Act of 1913.

In *Gimbel Bros., Inc.* v. *United States*, 48 Cust. Ct. 18, C.D. 2308, a review of related provisions in the Tariff Act of 1922 was discussed as follows:

It is interesting to note that the language of paragraph 1213 of the Tariff Act of 1922, which covered artificial silk, is substantially the forerunner of all of schedule 13 in the present act. Said paragraph 1213 of the Tariff Act of 1922 covers, basically, yarns and filaments, waste and yarns from waste, and yarns and threads. However, instead of the limitations or definitions set forth in the present paragraph 1313, as quoted, *supra*, the language of the 1922 provisions refers to yarns, threads, or filaments of artificial silk "by whatever name known and by whatever process made." The particular portion of paragraph 1213, to which paragraph 1430 of the Tariff Act of 1922 relates, reads as follows:

* * * products of cellulose, not compounded, whether known as visca, cellophane, or by any other name, such as are ordinarily used in braiding or weaving and in imitation of silk, straw, or similar substances, * * *.

Under the Tariff Act of 1922, the court, in the case of *United States* v. *Borgfeldt & Co.*, 14 Ct. Cust. Appls. 240, T.D. 41873, considered the change of language of paragraph 358 of the Tariff Act of 1913 and paragraph 1430 of the Tariff Act of 1922. After noting these changes and reviewing the *Veit* and *Rolland Frères* cases, *supra*, the court made the following observations:

This court thus, in the two cases cited, defined in a tariff sense the terms

"yarns," "threads," and "filaments." Thereafter the Congress enacted the Tariff Act of 1922, and, we must assume, having in mind the construction thus placed upon these terms. In rewriting paragraph 358 of said tariff act of 1913 as paragraph 1430 of the Tariff Act of 1922, the concluding portion of said paragraph 358, as follows:

> \* \* \* all of the foregoing of whatever yarns, threads, or filaments composed—

was made to read in said paragraph 1430:

> \* \* \* when composed wholly or in chief value of yarns, threads, filaments, *tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213.* [Italics quoted.]

It is contended this change of language was intended to meet and obviate the necessity of further judgments such as those rendered in the *Veit* and *Rolland Frères* cases above referred to, and that, therefore, those cases should no longer be followed as authorities. That the enactment of said paragraph 1430 did obviate the difficulty as to the material involved in both cases cited, can not be doubted. But we are totally unable to discover any apparent intent to disturb the construction which we gave in those cases to the terms "yarns," "threads," and "filaments," when applied to *any other materials* except as to those particularly inserted in said paragraph 1430, and which we have, in the quoted portion, italicized. To have disclosed such an intent would have been comparatively easy and might have been evidenced by a very slight change of language; in the absence of such a change, we are not justified in concluding the Congress intended any different construction to be placed upon these terms. [Italics quoted.]

Hence, the Tariff Act of 1922 with its provision for products of cellulose attempted to overcome the decisions in the *Veit* and *Rolland Frères* cases, *supra*. The definition given in paragraph 1313 of the Tariff Act of 1930, as indicated in the *Loudon* case, *supra*, employed words of extension and not limitation.

The imported netting made of perlon monofilaments, which is a filament by its own designation, falls within the first portion of paragraph 1313, as amended, *supra*, and is not limited by the phrase "suitable for the manufacture of textiles," which relates only to bands and strips not over 1 inch in width.

The use of the term "synthetic textile" in the first portion of said definition, as amended, *supra*, is intended to encompass any synthesized product in the form of fiber, filament, or fibrous structure, derived from cellulosic or noncellulosic material by chemical processes. It is, therefore, apparent that said definition is the description of a product so produced and does not necessarily relate to a product capable of being transformed into a fabric. As indicated in the *Louden* case, *supra*, the terms rayon or other synthetic textile are used in the same sense. Even if the phrase, "suitable for the manufacture of textiles," did relate to fibers, filaments, or fibrous structures, and we do not so hold, there is no evidence of record that the perlon monofilaments

utilized in the manufacture of the imported merchandise can not be used or are not "suitable for the manufacture of textiles."

The construction of paragraph 1313, as amended, *supra*, as urged by plaintiffs, being erroneous, and for all of the foregoing reasons, the protest is overruled.

Judgment will be rendered accordingly.