(C.D. 3854)

ATLANTIC LINEN IMPORTING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 25, 1969)

*Lane, Young & Fox* (*William Whynman* and *James G. McGoldrick* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Richard J. Kaplan* and *Arthur H. Steinberg*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This case brings before the court for determination the proper classification of certain vinyl luncheon mats measuring 12 inches by 18 inches which were imported from Japan. The merchandise was assessed with duty at the rate of 30 per centum ad valorem and 25 cents per pound under the provisions of paragraph 1312, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary

Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which provides as follows:

> Manufacturers [sic] of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding 1 inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for (except gill nets or netting)_____ 25¢ per lb. and 30% ad val.

Plaintiff claims said merchandise to be properly classifiable under the provisions of paragraph 1558, Tariff Act of 1930, as modified, as an article manufactured in whole or part, not specially provided for, and alternatively by virtue of the similitude clause contained in paragraph 1559, Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, under the following provisions of the Tariff Act of 1930, as modified, paragraph 1537(a), paragraph 412, paragraph 911(b) and paragraph 1413.

The record herein consists of the testimony of two witnesses called on behalf of plaintiff and six exhibits introduced by plaintiff. The record clearly establishes that plaintiff's exhibit 1, the imported article, is used in the same manner as place mats made of paper, linen, cotton, wood, plastic, bamboo, rush straw and cotton and rayon mixtures. The use of course is to protect the table and provide insulation. Both witnesses agreed that none of the luncheon mats with which they are familiar were constructed in the same manner as plaintiff's exhibit 1. The material of the other mats would also be different since exhibit 1 is made of a material covered by a patent, a copy of which was received in evidence as plaintiff's exhibit 2.

Counsel for the parties stipulated as follows:

> Mr. Kaplan: The Government would be willing to stipulate that Exhibit 1 is composed of hollow material, hollow tube-like filament of a hollow material, your Honor. That would be our offer one.

> Mr. Whynman: That is agreed.

> Mr. Kaplan: That the threads in some of this material consist of viscose rayon strips.

> Mr. Whynman: Agreed.

> Mr. Kaplan: And, that the exhibit itself, the material of which it is in chief value of polyvinylchloride.

> Mr. Whynman: Agreed.

> Mr. Kaplan: If your Honor please, the Government would offer to agree with Plaintiff that the exhibit, the hollow tube-like material, was produced by extrusion, from a liquid form into its present solid hollow tube-like form by being forced by pressure through spinnerets.

Mr. Whynman: Agreed.

The provisions of paragraph 1312, *supra*, under which classification was made, covers two types of articles: 1. Those manufactured of filaments, fibers, yarns or threads of rayon or other synthetic textile and 2. textile products made of bands or strips (not exceeding 1 inch in width) of rayon or other synthetic textile. The advisory classification by the appraiser and the report of the collector, which indicates he adopted the advisory classification, utilized the nonstatutory language manufactures in chief value of synthetic textile, not specially provided for. In view of this, plaintiff contends such an ambiguous classification should not have the benefit of the presumption of correctness attaching to the classification. Whether the presumption of correctness does or does not attach to the classification, however, is of little consequence. Counsel for the parties have stipulated in effect that the involved mats are made of hollow tubelike filaments. Therefore we have an article made of a synthetic material—polyvinylchloride in the form of a filament which would at least fall within the purview of paragraph 1312, *supra*.

In order to properly consider the provision of paragraph 1312, *supra*, it is necessary to also consider the language of paragraph 1313 of said act, as amended by T.D. 54676, which reads as follows:

As used in this title, the term "rayon or other synthetic textile", means any fiber, filament, or fibrous structure, and any band or strip (suitable for the manufacture of textiles) not over one inch in width, all the foregoing whether formed by extrusion or by other processes from substances derived by man from cellulosic or noncellulosic materials by chemical processes, such as, but not limited to, polymerization and condensation, but the term does not include fibers, filaments, fibrous structures, or bands and strips of glass or other nonmetallic mineral, or of metal, paper, or natural rubber.

(b) Notwithstanding the provisions of subsection (a) of this section, nothing in this section shall change the existing customs classification of nylon monofilament fishing line, nylon surgical sutures, nylon tennis racket strings or nylon brush bristles.

In our opinion in the case of *Robert E. Landweer & Co., Inc., Consolidated Net & Twine Company, Inc.* v. *United States*, 52 Cust. Ct. 122, C.D. 2448 (1964), we reviewed the background of the predecessor provisions and the language contained in paragraph 1313, as amended, *supra*. We therein made the following statements:

Although plaintiffs endeavored to establish that the monofilament used in the gill netting involved herein was not susceptible to textile manufacturing, Judge Donlon, the trial judge, properly held that the witness had not been qualified with respect to textile manufactures.

In any event and notwithstanding the lack of evidence with respect to textile manufacturing, the basic proposition presented

was the interpretation of the new definition contained in paragraph 1313, as amended, *supra*. It is the parenthetical phrase, "suitable for the manufacture of textiles," which is relied upon by plaintiffs herein. It is contended the phrase is a limiting one which requires all rayon or other synthetic textiles, as defined in paragraph 1313, as amended, *supra*, to be suitable for the manufacture of textiles. The grammatical construction of the paragraph does not bear out this theory. The use of a comma after "fibrous structure," in conjunction with the word "and," and the placing of the phrase in parentheses clearly evidence the intent of Congress to include within the scope of the provision any band or strip not over 1 inch in width, which is suitable for the manufacture of textiles. The parenthetical phrase does not modify "rayon or other synthetic textile" or "fiber, filament, or fibrous structure," but covers only bands or strips not exceeding 1 inch in width, as indicated, *supra*.

\*     \*     \*     \*     \*     \*     \*

The imported netting made of perlon monofilaments, which is a filament by its own designation, falls within the first portion of paragraph 1313, as amended, *supra*, and is not limited by the phrase "suitable for the manufacture of textiles," which relates only to bands and strips not over 1 inch in width.

The use of the term "synthetic textile" in the first portion of said definition, as amended, *supra*, is intended to encompass any synthesized product in the form of fiber, filament, or fibrous structure, derived from cellulosic or noncellulosic material by chemical processes. It is, therefore, apparent that said definition is the description of a product so produced and does not necessarily relate to a product capable of being transformed into a fabric.

By the same token in the case at bar we have a stipulation which in effect characterizes the material of which exhibit 1 is made as a "hollow tube-like filament." Following the above language it is apparent from this stipulation and by an examination of exhibit 1 that the article involved is manufactured from a filament. Filaments are encompassed by the first portion of the definition contained in paragraph 1313, *supra*, which does not require the product to be capable of being transformed into a fabric.

Since there has been established that the place mats are manufactured of synthetic filaments, it is incumbent upon plaintiff to negate this evidence. The similitude clause contained in paragraph 1559, *supra*, can have no application to any article which can be classified directly under any tariff enumeration including the so-called basket clause enumerations, such as involved herein. *Moscahlades Bros* v. *United States*, 13 Ct. Cust. Appls. 633, T.D. 41482 (1926) ; *P. Silverman & Son* v. *United States*, 32 CCPA 99, C.A.D. 292 (1944). Nor does the nonenumerated provision of paragraph 1558, *supra*, apply. *Package Machinery Co.* v. *United States*, 41 CCPA 63, C.A.D. 530 (1953).

The protest is accordingly overruled.

Judgment will be entered accordingly.