(C.D. 4057)

New York Merchandise Co., Inc. *v.* United States

---

[5] It may be noted that in his 1948 letter ruling, the Commissioner of Internal Revenue wrote plaintiff that "based upon the evidence presented * * * it is shown that you are organized and operated exclusively for religious and educational purposes." However, the evidence in the present case—i.e., plaintiff's certificate of incorporation—demonstrates that plaintiff was organized for religious, educational and *charitable* purposes. In any event, whether or not plaintiff was organized for charitable, as well as religious and educational purposes, was quite immaterial to internal revenue consideration of the matter. For even if the evidence prresented in 1948 had shown that plaintiff was organized for charitable purposes, this would have made no difference in its entitlement under section 101(6) to exemption from federal taxes.

United States Customs Court, Second Division

(Decided on rehearing [C.D. 2533] August 6, 1970)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) ; *Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) associate counsel; for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* 'and *Harold L. Grossman*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This matter comes before the court for decision pursuant to our order in *New York Merchandise Co., Inc.* v. *United States*, 54 Cust. Ct. 469, Abstract 69387 (1965), which granted a rehearing in the above entitled case, initially decided in *New York Merchandise Co., Inc.* v. *United States*, 54 Cust. Ct. 199, C.D. 2533 (1965).

Our original decision held the classification of certain plastic dresser or bureau scarfs measuring 14 by 42 inches and 15 by 33 inches under the provisions of paragraph 1529(a), Tariff Act of 1930, as modified by the supplemental agreement between the United States and Switzerland, 90 Treas. Dec. 174, T.D. 52832, by virtue of the similtude provisions contained in paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, T.D. 53599, to be erroneous. However, plaintiff having failed to establish the correct classification, the court overruled the protest without affirming the classification therein.

Plaintiff contends at this time that said merchandise is primarily subject to duty at only 10 per centum ad valorem under the provisions of paragraph 1558, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and T.D. 52827. Alternatively plaintiff claims, by virtue of the similitude provision contained in paragraph 1559(a), *supra*, the imported merchandise to be subject to classification under the following provisions:

Under par. 911(b), as modified by T.D. 53865, by similitude to cotton table and bureau runners and scarfs, at 15% ad valorem;

Under par. 1023, as modified by T.D. 54108, by similitude to manufactures of flax, at 17% ad valorem;

Under par. 923, as modified by T.D. 53865, by similitude to manufactures of cotton, not specially provided for, at 20% ad valorem;

Under par. 1023, as modified by T.D. 51802, by similitude to manufactures of vegetable fiber other than cotton, flax, and jute, at 20% ad valorem.

Plaintiff has abandoned its claim under paragraph 1413, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802. Accordingly said claim is dismissed.

Defendant, in addition to urging the correctness of the classification, alternatively urges classification under the provisions of paragraph 1312, Tariff Act of 1930, as modified, by virtue of the highest rate prescribed provision of paragraph 1559(c), Tariff Act of 1930, as amended.

The pertinent portions of the provisions involved herein read as follows:

Paragraph 1529(a) of the Tariff Act of 1930, as amended:

> Laces, lace fabrics, and lace articles, made by hand or a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; lace window curtains, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, and ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine; and fabrics and articles embroidered (whether or not the embroidery is on a scalloped edge), tamboured, appliquéd, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1022, 1111, 1116(a), 1504, 1505, 1513, 1518, 1523, or 1530(e), or in Title II (free list) or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles or rayon or other synthetic textile, * * *.

Paragraph 1529(a) of the Tariff Act of 1930, as modified by the supplemental agreement between the United States and Switzerland, *supra:*

> Insertings, edgings, * * * doilies, rounds, ovals, oblongs, squares, motifs, bureau or table scarfs and sets, piano scarfs, chair back and chair arm covers, antimacassars, * * *; all the foregoing, finished or unfinished, however provided for in paragraph 1529(a), Tariff Act of 1930, which are embroidered or tamboured and which are wholly or in chief value of cotton (not including any laces, lace fabrics, or lace articles, made in any part on a lace machine, or articles or materials embroidered or tamboured in any part by hand or otherwise than with the use of multiple-needle, Cornely, or

Bonnaz embroidery machines, but not excluding articles or materials the edges of which are embroidered with the use of other machines and not excluding articles or materials by reason of the incidental ornamentation thereof by hand by means of spider work, faggoting, or similar stitches, extending across open-work resulting from the removal of a part of the fabric) :

\*     \*     \*     \*     \*     \*     \*

Other _____ 45% ad val.

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, *supra:*

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

\*     \*     \*     \*     \*     \*     \*

(c) If two or more enumerations shall be equally applicable to any article, it shall be subject to duty at the highest rate prescribed for any such enumeration.

Paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra:*

Articles manufactured, in whole or in part, not specially provided for (except \* \* \*) _____ 10% ad val.

The record originally made consisted of the testimony of one witness called on behalf of plaintiff and two samples of the merchandise received in evidence as plaintiff's exhibits 1 and 2. The witness, Mr. Lawrence Ginsberg, chief buyer of textile merchandise for plaintiff, described the manufacture of the involved merchandise as observed by him as follows:

\* \* \* The process is as follows : These are made on large plates, probably made out of brass, maybe copper, I am not sure about the material, in which there is etched the exact design that appears on the scarf. After etching a liquid made of plastic, a milky liquid resembling the common, ordinary bottle of milk, with the consistency of glue, is smeared on top of the etching and flattened out, and then inserted into an electric oven, and kept there for a short period of time, after which they are then removed and allowed to

dry for a few moments, and then taken out in this finished product that you see right here. That is the process I saw in Israel.

His testimony was to the effect that he had seen articles such as exhibits 1 and 2 made of cotton, linen or rayon and their use was the same. The cotton articles were made on a lace machine or on a punched-out system and were embroidered. The imported article is not made of yarns, threads or filaments, whereas the cotton, linen and rayon articles were textiles composed of yarns, threads and filaments. Parties stipulated the plastic merchandise before the court contained no filler.

On rehearing, plaintiff introduced the testimony of five additional witnesses and seven exhibits. Defendant introduced the testimony of one witness and one exhibit. While the court dismissed the claim under paragraph 1413, *supra*, relating to manufactures of paper, the record did negate the existence of paper doilies in the size and for similar use to exhibits 1 and 2.

The balance of the testimony establishes the imported bureau or dresser scarfs are used in the same manner, and for the same purpose as such articles which are made of cotton, linen, rayon, rayon and cotton, rayon and linen, rayon and silk, and nylon. Such use is for decorative purposes as well as protection against scratching. Articles similar in appearance to plaintiff's exhibits 1 and 2 are embroidered, made on a lace machine or are punched and have threads drawn. Plaintiff's exhibits 8 and 9 admittedly are made without ornamentation. Exhibit 8 made of linen has a plain hemstitched edge whereas plaintiff's exhibit 9, made of cotton with embossing, is made both with and without a lace edge.

The similitude clause contained in paragraph 1559(a), Tariff Act of 1930, as amended, *supra*, may be resorted to only when the merchandise is not enumerated in any provision of the tariff act either dutiable or free with the exception of the nonenumerated provision of paragraph 1558, Tariff Act of 1930, as modified, *supra*. *Package Machinery Co.* v. *United States*, 41 CCPA 63, C.A.D. 530 (1953) ; *Ungerer & Co., Inc.* v. *United States*, 33 Cust. Ct. 152, C.D. 1647 (1954). Since classification herein was by virtue of the similitude clause contained in paragraph 1559(a), as amended, *supra*, it is presumed that no direct enumeration is contained in the tariff act. Accordingly, similitude must be considered before the application of the nonenumerated provision of paragraph 1558, as modified, *supra*.

In our original opinion, we held that the similitude clause contained in paragraph 1559(a), Tariff Act of 1930, as amended, *supra*, was not applicable to articles provided for in paragraph 1529(a), as modified, *supra*, by virtue of certain exclusionary language relating

to yarns, threads or filaments. Defendant again urges this classification based upon the theory that the amendment of paragraph 1559(a), *supra*, eliminating quality and texture as a basis and retaining use as a primary test with material considered only in the event of equal use eliminated this so-called exclusion. Defendant also contends that the language of paragraph 1529(a), *supra*, when it utilizes the terms yarns, threads, and filaments is merely descriptive and not exclusionary.

The first contention of defendant relating to the amendment of paragraph 1559(a), *supra*, eliminating the exclusionary provision was not only considered in the prior decision but was clearly disposed of therein. We adhere to the position taken in our original opinion relative to this phase of the case.

At the original trial, the government did not argue that the terms yarns, threads and filaments are merely descriptive and not exclusionary. This theory is now urged by virtue of a decision of the first division of this court handed down subsequent to our original opinion. See *Alex W. Block Company* v. *United States*, 61 Cust. Ct. 412, C.D. 3644, 294 F. Supp. 316 (1968). In that case, the court held certain plastic garlands to be properly dutiable under the provision for garlands wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads by virtue of the similitude clause contained in paragraph 1559(a), *supra*. There, the court held the terms involved to be descriptive and not exclusionary. We do not deem the *Block* decision, *supra*, to be controlling herein. The terms involved in the instant case are yarns, threads and filaments which have been consistently held to be such articles as are capable of being knit, woven or sewn. *United States* v. *Veit Son & Co.*, 8 Ct. Cust. Appls. 290, T.D. 37540 (1918); *Gimbel Bros., Inc.* v. *United States*, 50 CCPA 23, C.A.D. 813 (1963). Accordingly, paragraph 1529(a), insofar as the terms yarns, threads and filaments are concerned, is restricted to such articles which are constructed by knitting, weaving or sewing.

In view of the foregoing, it is our opinion that said terms are not merely descriptive, but were intended by Congress to be exclusionary. Therefore, any article directly falling within paragraph 1529(a) may not be utilized as a prototype article for the application of the similitude clause under paragraph 1559(a), as amended, *supra*. *J.M.P.R. Trading Corp., Alltransport, Inc.*, 33 Cust. Ct. 226, C.D. 1658 (1954). *Aff'd, Same* v. *Same*, 43 CCPA 1, C.A.D. 600 (1955).

This leaves the court for consideration, based upon the record, only exhibits 8 and 9 as a basis for similitude. The record establishes that all bureau scarfs, including exhibits 8 and 9 have the same use. Therefore, the question is whether either exhibit 8 or 9 most resembles exhibits 1 and 2 in material. In utilizing exhibit 9 as a prototype, we of course are considering said exhibit as not containing a lace edge. This was borne out by the record which established the production of said item without trimming. If exhibits 8 and 9 equally resembled in material exhibits 1 and 2, we would of course be required to impose the highest rate applicable to them by virtue of the higher rate clause contained in paragraph 1559(a), Tariff Act of 1930, as amended, *supra*. In this instance, it would be the rate applicable to exhibit 8 under paragraph 1023, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Similitude of material contemplates a comparison on the basis of the physical characteristics of the material, *Morris Friedman* v. *United States*, 58 Cust. Ct. 456, C.D. 3019 (1967), as well as the chemical composition and origin of material. *Technical Tape Corp.* v. *United States*, 55 CCPA 38, C.A.D. 931 (1968).

An examination of the imported articles, exhibits 1 and 2, and exhibits 8 and 9, as well as a consideration of the record discloses a clear distinction in physical appearance, and physical characteristics. Aside from the appearance, the characteristics are entirely different as are the origins. The imported merchandise does not contain yarns, threads or filaments, nor was it woven or even considered to be a textile material. Both exhibits 8 and 9 are woven into textile material before being made into a completed article. The merchandise at bar is made from a liquid plastic which is poured on plates. Exhibits 8 and 9 are natural fibers, cotton and linen, whereas the articles involved are synthetics. Under any and all tests heretofore proclaimed by case law and an examination and comparison of the articles lead us to the conclusion that similarity of material does not exist between the imported article and articles enumerated elsewhere in the tariff act. Therefore, we hold the imported dresser scarfs to be subject to classification under the provisions of paragraph 1558, *supra*, as articles manufactured in whole or in part, not specially provided for.

Judgment will be entered accordingly.