The A. W. Fenton Co., Inc. *v.* United States

---

Court No. 63/6050

(Decided April 21, 1975)

*Allerton deC. Tompkins* for the plaintiff.
*Irving Jaffe*, Acting Assistant Attorney General (*Herbert P. Larsen* and *Max F. Schutzman*, trial attorneys), for the defendant.

FORD, Judge: This action is directed against the classification of certain table mats measuring approximately 12″ x 18″ which are composed of polyvinyl chloride in the form of hollow tubular structures having a diameter of somewhat less than one-eighth of an inch. They were classified under the provisions of paragraph 1312, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which provides as follows:

> Manufacturers [sic] of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding 1 inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for (except gill nets or netting)__ 25¢ per lb. and 30% ad val.

The definition of the term "rayon or other synthetic textile" in paragraph 1313 of the Tariff Act of 1930, as amended by Pub. L. 85–645, 72 Stat. 602, reads as follows:

> As used in this title, the term "rayon or other synthetic textile", means any fiber, filament, or fibrous structure, and any band or strip (suitable for the manufacture of textiles) not over one inch in width, all the foregoing whether formed by extrusion or by other processes from substances derived by man from cellulosic or noncellulosic materials by chemical processes, such as, but not limited to, polymerization and condensation, but the term does not include fibers, filaments, fibrous structures, or bands and strips of glass or other nonmetallic mineral, or of metal, paper, or natural rubber.

Plaintiff's primary claim is that the mats are properly subject to duty at the rate of 12½ per centum ad valorem as manufactures of grass, sea grass, straw or weeds as prescribed by paragraph 1537(a), Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, and T.D. 53877, by virtue of the similitude provision contained in paragraph 1559(a), Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, T.D. 53599. The pertinent portions of said provisions provide as follows:

Paragraph 1537(a), as modified, *supra:*

> Manufactures of bone, chip, grass, sea grass, horn, straw, or weeds, or of which these substances or any of them, or a combination of these substances or any of them with quills, palm leaf, or whale bone, is the component material of chief value, not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other_____ 12½% ad val.

Paragraph 1559(a), as amended by the Customs Simplification Act of 1954, 68 Stat. 1137:

> Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Alternatively plaintiff contends said merchandise to be properly dutiable under the following provisions:

Paragraph 1558, Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52827, at 10 per centum ad valorem or at 8½ per centum under said paragraph, as modified by T.D. 54108.

Paragraph 1539(b), as modified by T.D. 54108, at 21 cents per pound and 17 per centum ad valorem or, by virtue of the similitude clause contained in paragraph 1559(a), *supra*, as similar to articles provided for in the following paragraphs:

911(b), as modified by T.D. 53865 and T.D. 53877, at 15 per centum ad valorem;

923, as modified by T.D. 53865 and T.D. 53877, at 20 per centum ad valorem;

1413, as modified by T.D. 52373 and T.D. 52462, at 17½ per centum ad valorem.

Additional claims set forth in the complaint were not argued by plaintiff and are deemed abandoned.

The record consists of the official papers, which were received in evidence without being marked, two exhibits offered by plaintiff, and the testimony of Mortimer Atleson, executive vice president of Plastic Film Products Corporation of Akron, Ohio, the actual importer herein. The witness testified that his duties include being in charge of sales, administrative work, product design and purchasing; that sales of the company's products are made throughout the United States and Canada; that he purchased the involved table mats on one of his trips to the Orient. Mr. Atleson observed the manufacture in Japan which he described as being made from polyvinyl chloride which compound is fed into an extruder which produced an article circular in form with a diameter somewhat less than one-eighth of an inch. From the extruder, they go on a conveyor to a dielectric heat cylinder which depresses the extruded material forming a design and welding them together in their semimelted state forming a table mat.

The witness produced a drawing of the merchandise which was received in evidence as plaintiff's exhibit 1. The exhibit depicts the mat though there are variations in the geometric design in the center of the mat and it is produced in various color combinations. Mr. Atleson has seen table mats used in homes of his friends on tables. The imported articles are used in the same manner as those composed of weeds, reeds, pineapple cloth, cotton, linen, plastic, etc. The witness stated that of the foregoing, the mats made out of straw, reed or weed most closely resemble the imported mats. The composition of the mat does not, according to the witness, fall within the definition contained in paragraph 1313, Tariff Act of 1930, or as amended, *supra*, since it is too rigid to be used in the manufacture of a textile. Plaintiff offered as exhibit 2 a paper straw as illustrative of the plastic used in the mat insofar as appearance is concerned.

The straw, however, is slightly larger in diameter than the hollow tubular structures used to manufacture the involved mats. Mr. Atleson was not aware of textiles being manufactured from polyvinyl chloride.

Based upon the record as made, plaintiff contends the imported table mats are not subject to classification under the provisions of paragraph 1312, *supra*, as they are not composed of filaments or fibers of a synthetic textile since the polyvinyl chloride tubes of which the imported mats are made are not a textile nor are they suitable for textile purposes.

Classification of the involved mats under the provisions of paragraph 1312, *supra*, carries with it the presumption of correctness that said merchandise is a manufacture of filaments, fibers, yarns or threads, of rayon or other synthetic textile. *Hayes-Sammons Chemical Co.* v. *United States*, 55 CCPA 69, C.A.D. 935 (1968).

Based upon an examination of plaintiff's exhibit 1 and the testimony of Mr. Atleson wherein he described the hollow tubelike structure, the court is of the opinion that the involved mats are made of filaments. This being so, the next consideration to be given relates to plaintiff's position with regard to the phrase "synthetic textile" as utilized in paragraph 1312, *supra*, and as defined in paragraph 1313, *supra*.

In the case of *Robert E. Landweer & Co., Inc., Consolidated Net & Twine Co., Inc.* v. *United States*, 52 Cust. Ct. 122, C.D. 2448 (1964), the court reviewed the then new definition contained in said paragraph 1313, *supra*, and made the following observation:

> Although plaintiffs endeavored to establish that the monofilament used in the gill netting involved herein was not susceptible to textile manufacturing, Judge Donlon, the trial judge, properly held that the witness had not been qualified with respect to textile manufactures.

> In any event and notwithstanding the lack of evidence with respect to textile manufacturing, the basic proposition presented was the interpretation of the new definition contained in paragraph 1313, as amended, *supra*. It is the parenthetical phrase, "suitable for the manufacture of textiles," which is relied upon by plaintiffs herein. It is contended the phrase is a limiting one which requires all rayon or other synthetic textiles, as defined in paragraph 1313, as amended, *supra*, to be suitable for the manufacture of textiles. The grammatical construction of the paragraph does not bear out this theory. The use of a comma after "fibrous structure," in conjunction with the word "and," and the placing of the phrase in parentheses clearly evidence the intent of Congress to include within the scope of the provision any band or strip not over 1 inch in width, which is suitable for the manufacture of textiles. The parenthetical phrase does not modify "rayon or other synthetic textile" or "fiber, filament,

or fibrous structure," but covers only bands or strips not exceeding 1 inch in width, as indicated, *supra.*

Accordingly, the fact that filaments may not be suitable for the manufacture of textiles does not militate against classification thereof under paragraph 1312, *supra.* In a subsequent decision involving plastic place mats made of hollow tubelike filaments, the court found said mats to be subject to classification under paragraph 1312, *supra. Atlantic Linen Importing Co.* v. *United States,* 62 Cust. Ct. 725, C.D. 3854 (1969).

Inasmuch as the court has found the mats to be made of filaments and it is not contested that polyvinyl chloride is a synthetic, it was incumbent upon plaintiff to negate this evidence. The record as made is lacking the necessary credible evidence to overcome the above facts. Accordingly, plaintiff's claim under the basket provision of paragraph 1558, *supra,* is overruled, as is the claim under paragraph 1539(b), *supra.* The claims made by virtue of the similitude clause contained in paragraph 1559(a), *supra,* are likewise overruled since classification by similitude may not be accomplished when the article involved may be classified under any tariff enumeration excluding the so-called basket clause of paragraph 1558, *supra. Moscahlades Bros.* v. *United States,* 13 Ct. Cust. Appls. 633, T.D. 41482 (1926); *P. Silverman & Son* v. *United States,* 32 CCPA 99, C.A.D. 292 (1944); *Package Machinery Co.* v. *United States,* 41 CCPA 63, C.A.D. 530 (1953); *New York Merchandise Co., Inc.* v. *United States,* 65 Cust. Ct. 73, C.D. 4057 (1970).

Judgment will be issued for defendant.